## Case No. 3,046.

### COLUMBUS INS. CO. v. PEORIA BRIDGE ASS'N.

[6 McLean, 70.] [1]

Circuit Court, D. Illinois. Oct. Term, 1853.

AUTHORIZATION OF BRIDGE BY STATE — OBSTRUCTION TO NAVIGATION — CONSTRUCTION OF STATUTE—INJURY TO VESSEL.

1. The principles declared in Columbus Ins. Co. v. Curtenius [Case No. 3,045]—again affirmed—that the river Illinois is free to all the citizens of the United States. But the legislature had no power to authorize the construction of a bridge which would be a material obstruction to its navigation, nor to declare that a bridge, with a draw of a particular width, was not an obstruction.

2. The true construction of the 2nd section of the act of the legislature of Illinois, of the 26th of January, 1847, is, that a space of seventy-five feet, fairly and substantially embracing the principal channel of the river, must be left open, estimating with reference to its course.

[Cited in Assante v. Charleston Bridge Co., 41 Fed. 366; Hannibal & St. J. R. Co. v. Missouri River Packet Co., 125 U. S. 271, 8 Sup. Ct. 880.]

3. The right of the free navigation of the Illinois, is consistent with the right of the state to construct bridges, provided they do not materially obstruct the navigation. They exist together, and neither can be permitted to destroy or essentially impair the other.

4. The authority to construct a bridge across a navigable stream, should be so exercised as to interfere as little as possible with the free navigation of the river. Every bridge may in one sense be said to be an obstruction; but that delay or risk which is inseparable from the thing which the state has the power to create, does not make it an obstruction in law.

5. The state is to determine when, where, and under what circumstances a bridge shall be constructed; and as a general thing, no third party can question the authority of the state in this respect.

6. If the bridge was an obstruction, the plaintiff cannot recover for the injury, if there was carelessness and negligence in the management of the boat injured.

Mr. Lincoln and Mr. Chumasero, for plaintiff.

Mr. Logan, Mr. Powell, and Mr. Peters, for defendant.

DRUMMOND, District Judge. This is the same case reported in 6 McLean, 209 [Columbus Ins. Co. v. Curtenius, Case No. 3,045] —the present defendant being substituted by agreement for the former defendants. After the decision of the court upon the demurrer, the defendants had leave to amend their pleas, and in their new pleadings traversed the averment in the declaration that the bridge, as constructed, was a material obstruction to the navigation of the river. Issue was joined upon the pleas, and the case was submitted to a jury. It appears by the evidence that the steamer Falcon, on the 22d of March, 1849, having several boats in tow, among which was the canal boat Troy, loaded with wheat, was descending the Illinois river; and in attempting to pass through the piers of the bridge constructed at Peoria, the canal boat struck one of the piers, was stove and sunk, and the cargo lost. The plaintiffs, having a policy of insurance on the canal boat and cargo, paid it, and brought this suit to recover the amount. There were only two questions made in the case;—the first was whether the bridge was a material obstruction to the navigation of the river; and the second, whether the boat had been managed with competent skill. A large number of witnesses were examined on these points, and there was some conflict in the evidence.

### Charge of the Court to the Jury.

From an examination of the subject in this case, at a former term, I came to the conclusion which I now repeat to you, that the river Illinois is a navigable stream, free to all the citizens of the United States, and the state could not authorize the construction of a bridge which would be a material obstruction to its navigation, and if you believe from the evidence, that the defendant has placed such obstruction in the river, then no exemption can be claimed by virtue of such obstruction. Whether it is a material obstruction or not, is a question of fact to be determined by the jury, upon a consideration of all the evidence in the case.

Some evidence has been given, which it is insisted proves that the bridge has not been constructed in accordance with the act of the legislature of 1847. It is for you to determine upon the evidence, whether it has been constructed as required by that act. If it has not been so built, then, of course, the defendant cannot claim any protection by virtue of it. The true construction of the second section of the act of 26th of January, 1847, is, that the defendant was obliged to have a space of seventy-five feet, fairly and substantially embracing the principal channel; and if, for any purpose, the bridge was run irregularly across the channel, that was not a compliance with the act, unless the seventy-five feet were left open, across the channel, estimating with reference to its curve. The defendant was not authorized to place any pier in the principal channel, but that must be left open, unless it was more than seventy-five feet wide, and in that event the usual channel for the passage of river craft should be left open. The legislature had no power to declare that a bridge constructed with a draw of a certain width, was not a material obstruction to the navigation of the river; and if the jury is satisfied from the evidence, that the defendant has complied with the act of 1847, still that does not determine the question whether or not it was an obstruction.

The right of free navigation of the Illinois, is not inconsistent with the right of the

[1] [Reported by Hon. John McLean, Circuit Justice.]

state to provide means of crossing the river by bridges, or otherwise, when the wants of the public require them, provided such bridges do not essentially injure the navigation of the river. It must be considered as settled, that the right to a free navigation of our western rivers, and the right of the state to adopt those means of crossing them which the skill and ingenuity of man have devised, as both are equally important, are co-existent, and neither can be permitted to destroy or essentially impair the other. The authority to construct a bridge across a navigable river, being in the state, it should be exercised in such a manner as, while it gives full effect to the power itself, it should interfere as little as possible with the other right —that of free navigation; and this is the true test whether a particular structure is such an obstruction as is contrary to law. The state having the power, the state itself, or if delegated to a corporation, the corporation, as a general thing, is exclusively to judge of the time, place and circumstances which were to give it exercise, and if it seems to the state that the necessities of the community call for its exercise, no third party can question the propriety of it, unless under peculiar circumstances, which do not appear to exist in this case. Every bridge— unless, indeed, one suspended over a river so as to be above all vessels and water craft —may, in one sense, be said to be an obstruction; but that delay or risk which is inseparable from the existence of the thing which the state has the power to create, does not make it an obstruction in contemplation of law. The necessity is the justification, and for such delay or risk the law will not give a right of action. These are principles which I had occasion to announce in an investigation which was recently made at Chicago, upon a bill filed by certain parties, to prevent the erection of a bridge across the Chicago river, and they embody my views of the law upon this branch of the case.

The jury are to take into consideration all the facts and circumstances which are in evidence before them—the character of the river itself, the trade upon it, the craft navigating it, and are to judge whether the piers placed by the defendant were a material obstruction. It is almost impossible to do anything more than to lay down general rules, to guide the minds of the jury upon this part of the case. It is in the nature of the subject that no precise and absolute rule can be given to the jury in this case, to enable them to determine whether this particular bridge was an obstruction, because it is the province of the jury to apply the law to the facts, and their conclusions will be influenced by the view they may take of the facts. It may be clear that a supposed bridge is an obstruction and that another is not; but between the two there may be infinite degrees of difference one way or the other, and it may be, and often is, hard to decide where the line of division is, as a matter of fact. If the jury are satisfied from the evidence that the bridge was not a material obstruction to the navigator, then from what has already been said, they will infer it was such a bridge as the state was authorized to erect, or cause to be erected; and the defendant is not liable for any damages sustained by the plaintiff. If the jury still believe the bridge was a material obstruction, then it is their duty to enquire into the circumstances attending the collision of the boat against the pier. In such case, if there was any want of ordinary care, skill or diligence on the part of those navigating the steamer or canal boat, the defendant is not liable.

The plaintiff cannot recover from the defendant, solely on the ground that an obstruction had been placed in the river. Admitting the defendant had obstructed the river, a party cannot, by carelessly or wantonly running his boat against such obstruction, hold the defendant liable, if the boat was sunk. The law will not compensate for carelessness or wantonness like that; for such an obstruction the law would furnish a remedy in another way. The law does not require that there should be extraordinary care or skill—in the case supposed—on the part of those navigating the steamer and canal boat. An error of judgment would not prevent the plaintiff from recovering, unless it was an error involving a want of care, skill or diligence. If they used the usual degree of care, skill and diligence, that was sufficient: the question is not whether the steamer by going in a different channel might not possibly have avoided the danger; but whether ordinary skill was exercised. To determine this, it is proper for the jury to take into consideration the unusual stage of the river, the submersion of the pivot pier, the carrying away of the superstructure, and all the other facts proved, such as the manner of fastening the canal boat to the steamer, &c. It is the duty, undoubtedly, of persons owning boats navigating the river, to employ competent agents in the management of their boats, as captains, engineers, pilots, &c.; and if any damage be sustained in consequence of an omission in this respect, they must bear the loss.

The jury are to take the opinions of the witnesses as to the bridge being an obstruction, and as to the manner in which the steamer and canal boat were managed; simply as opinions of men of experience to inform their judgments, not as absolutely binding them. The jury may form their own conclusions on these points from the whole testimony. In this part of the case, of course, much more reliance ought to be placed on particular facts which establish a conclusion, than on the mere opinions of others. The canal boat and cargo were abandoned to the plaintiff, and were sold, and the proceeds received; if the jury shall find for the plaintiff, the measure of damages is the amount

paid by the plaintiff, with interest from the time of payment, deducting the amount received as the proceeds of the boat and cargo.

The jury, after being kept together a long time, were unable to agree, and by consent of parties were discharged; and the suit was finally compromised.