May Term,
1854.

THE BOARD OF COMMISSIONERS OF ST. JOSEPH COUNTY *v.* PIDGE and Another.

THE BOARD
OF COMMIS-
SIONERS, &c.
v.
PIDGE.

The *St. Joseph* river is a stream navigable by continuous voyages in the states of *Indiana* and *Michigan*, and is, therefore, within the operation of the laws of congress in relation to navigable rivers.

The state has no authority either entirely to prevent, or seriously to obstruct, the navigation of the *St. Joseph* river.

The state may, however, improve the navigation of the *St. Joseph* river, and all other streams within her borders, and may authorize the erection of dams, locks, bridges, and other works, provided that they do not substantially injure such streams for purposes of navigation.

At *South-Bend*, in *St. Joseph* county, there were rapids in the *St. Joseph* river, which were sometimes impassable by boats. In 1842 the legislature enacted a law authorizing the *South-Bend Manufacturing Company* to build a dam and a lock there, to be sufficient for the safe passage of boats and other craft usually navigating the river, &c. The company, accordingly, in 1843, erected the dam and lock, the former of which turned the stream to the south bank where the lock was built, from which a race was cut, through which the boats passed in ascending the river to, and descending from, the lock. This new channel improved the navigation of the river at that point, especially in low water, and was adopted by the trade and commerce of the river. In 1845 the county of *St. Joseph* built a bridge across the river, by authority of the R. S. 1843, extending over the lock. The bridge was built upon an important highway and mail route leading into central *Michigan*, and was a great convenience to the public. It was adapted to the channel of the stream as then navigated, was made convenient for boats to pass under it through the lock, and was no obstruction to navigation in said new channel. The new channel continued to be navigated without objection till the summer of 1849, when the dam gave way and the stream ceased to flow through the lock and new channel; but, meanwhile, a bar had been formed between the dam and bridge, in the old channel, which prevented boats from passing through it, under the bridge, as they could else have conveniently done. The steamboat *Michigan*, owned by the plaintiffs, was, with others, arrested in her progress by the breaking of the dam; and the plaintiffs, therefore, brought this suit against *St. Joseph* county for building the bridge. *Held*, that, assuming that the bridge actually obstructed the old channel and caused the detention of the plaintiffs' boat, the suit could not be maintained.

APPEAL from the *Elkhart* Circuit Court.

Monday,
May 22.

PERKINS, J.—Case by *Pidge* and *Ingersoll* against the commissioners of *St. Joseph* county, to recover damages alleged to have been sustained through an obstruction of the *St. Joseph* river by a bridge erected by the authority of

May Term,
1854.

THE BOARD
OF COMMIS-
SIONERS, &c.
v.
PIDGE.

said commissioners. The general issue and other pleas were pleaded, the cause was tried by a jury, and there was a verdict for the plaintiffs, and a judgment, over a motion for a new trial, on the verdict. The cause was originally instituted in the *St. Joseph*, but was removed, by change of venue, to the *Elkhart*, Circuit Court.

The *St. Joseph* river, we know historically, to be a stream navigable, by continuous voyages, in the states of *Indiana* and *Michigan*, and, hence, to fall under the operation of the laws of congress in regard to navigable rivers. It is, then, a stream the navigation of which the state can not entirely prevent, nor seriously obstruct. But, notwithstanding the state can not seriously obstruct, she may improve the navigation of the *St. Joseph*, and of any and all streams within her borders, and may authorize the erection in and over them of any works that do not substantially injure them for purposes of navigation. The state may authorize dams and locks in, and bridges over them, within this restriction. This point is well settled.

At *South-Bend*, in *St. Joseph* county, were rapids in the *St. Joseph* river, which, sometimes, boats could not pass; and in 1842 the legislature enacted a law authorizing the *South-Bend Manufacturing Company* to build a dam and a lock in the river at that place. Section 7 of the act is as follows:

" Said company is authorized to erect a dam across the *St. Joseph* river, at or near the head of the rapids, at or near the town of *South-Bend*, or such other convenient place at or near said town as they may think proper, said dam not to exceed six feet in perpendicular height above the surface of the water: *Provided*, that they erect a substantial and convenient lock, sufficient to admit the safe passage of all boats and other water craft usually navigating said stream; and *provided*, also, that they keep said lock in good repair for the passage of boats, and have a sufficient number of hands constantly to attend the same." Local Laws 1843, p. 4.

Under this act said company erected, in 1843, a dam and lock in the river at *South-Bend*—the dam turning the

stream to the south bank where the lock was constructed, and from which a race was cut, through which the boats passed from the main channel, in ascending the river to, and in descending from, the lock. In other words, the company turned the water from its ordinary channel over the rapids, into one newly constructed around the rapids and furnished with a lock. This new channel improved the navigation of the stream, at that point, especially in low water, and was adopted by the trade and commerce of the river.

In 1845, the county of *St. Joseph* built a bridge across said stream, extending over the lock. The bridge was upon an important highway and mail route leading into central *Michigan*, and was a great public convenience. It was adapted to the channel of the stream as then navigated, was made convenient for boats to pass under it through the lock, and was, as all the witnesses agree, no obstruction to navigation in the channel which it was, and had been for two years, following, when the bridge was built. It may be proper here to observe that the bridge was erected by authority of law. The R. S. of 1843, section 58, p. 333, enacted that, "whenever, in the opinion of the board of county commissioners, the public convenience shall require that a bridge should be built over any water course, they shall" take measures for its erection, &c.

The new channel continued to be navigated without objection till the summer of 1849, six years from its adoption, and four years from the building of the bridge, when the dam gave way, and the stream ceased to flow through the lock and new channel; but, in the mean time, a bar had been formed between the dam and the bridge, in the old channel, so that boats could not pass "by a straight shute," as it is denominated, down the old channel, and through the bridge over it, and, hence, could not pass at all. But for the bar in the old channel, boats could have passed without inconvenience, between the "bents" of the bridge, in that channel, as the space between them was some six feet wider than were the steamboats on the river.

May Term,
1854.

THE BOARD
OF COMMIS-
SIONERS, &c.
v.
PIDGE.

The steamboat *Michigan*, owned by the plaintiffs below, was one of those arrested in its progress by the breaking of the dam, and thereupon this suit was commenced against *St. Joseph* county, for building said bridge.

We shall consider this case as though the bridge had actually obstructed the old channel of the river and been the cause of the detention of the boat in question.

The legislature, as we have seen, had power to pass the act of 1842 above set forth, authorizing the erection of the dam and lock in the *St. Joseph* river. Those structures, therefore, when built, were legally in that river, and the new channel for boats which they occasioned and furnished, became, as a consequence, from thence, the legal navigable channel of the river, and the one, and the only one, protected by law from obstruction. That was the channel in existence and in use when the bridge in question was built, to which it was adapted, and to which it was then no obstruction. It was, at that time, no nuisance, no illegal structure, and neither the bridge nor its proprietors have since done anything, nor been in any default, that has changed its character. It must, therefore, be a legal structure still.

That legal artificial channel of the *St. Joseph* river has been obstructed, and the question is, who has done it? who is liable for it? Not the bridge, surely. If the dam occasioned it, under such circumstances as render its builders liable, let them be looked to. If it was the act of God, let Providence be submitted to. The navigation of these streams, in their natural state, is often obstructed by freshets, and by low water, by bars across their channels, by drift and fallen trees, whereby boats are snagged and sunk; and some of these things might, in the instance under notice, have happened in the *St. Joseph*, if the new channel had not been constructed. These improvements may sometimes prevent, and sometimes occasion temporary obstructions; the result in this particular may be balanced in the long run.

We regard the late *Wheeling Bridge* case as a direct authority for the doctrine above asserted. In that case,

the legislature of *Virginia* had chartered a company to build a bridge across the *Ohio* river. The bridge was built and obstructed the navigation of the main channel of the stream—that improved under the acts of congress. A bill was filed to procure the abatement of the bridge as a nuisance, and the Court were about to decree accordingly. The bridge company then proposed to open and improve a new channel to accommodate the commerce of the river, and span it with a bridge having a draw to allow the passage of boats, as a condition of the Court's suffering the bridge over the originally-used main channel to stand. The Court gave them time to construct the new channel. The Court say, "if the western channel of the river shall be made to afford an equally safe and unobstructed passage for boats as the eastern channel before the structure of the suspension bridge, excepting the mere passage of the draw, and the increased distance, no appreciable injury is done to commerce." 13 How. (U. S.) R. 625.

May Term, 1854.

THE BOARD OF COMMIS- SIONERS, &c. v. PIDGE.

Now, suppose the western channel to be opened and improved by the bridge company, at a great expense, so as to comply with the requisition of the Court, that the Court sanction it, and decree that the suspension bridge over the formerly-used channel shall remain (obstruction though it be), and that in the course of events hereafter, the newly-improved western channel shall become, by the act of God, temporarily impassable, would the bridge company be liable to be sued because the bridge obstructed the old original channel so that it could not then be passed? It seems to us they would not.

*Angell*, in his work on Water Courses, page 582, (4 ed.) says:

"If a dam is built on a navigable river, in conformity with the provisions of law, and the shute has been rendered innavigable by flood or accident, the owner of the dam would not be liable for damage occasioned thereby, before he had time to repair it; nor, in an action for a private nuisance, would he be liable for an erroneous opinion as to the safety of running through the shute in its dam-

May Term, 1854.

aged condition;" citing *Roush* v. *Walter*, 10 Watts (Penn.) R. 86.

On the facts in this case, then, the judgment for the plaintiff was clearly wrong, and the instructions given to the jury, tending to impress upon them a conviction of the plaintiffs' right to recover, were clearly erroneous.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*J. A. Liston*, for the appellants.

*E. B. Crocker*, for the appellees.