SWEENEY vs. THE CHICAGO, MILWAUKEE & ST. PAUL RAIL-
WAY COMPANY.

*February 20 — March 18, 1884.*

*Navigable rivers — Bridges — Obstruction of navigation — Pleading —
Establishment of channel span.*

1. The legislature may authorize the construction of bridges across
the navigable waters leading into the Mississippi, but such bridges
must be so constructed and maintained as not materially or un-
necessarily to obstruct navigation.

2. A complaint alleging that the channel of the Wisconsin river was
so obstructed by a bridge built by the defendant below the city of
Portage, that no boats or rafts could pass in safety without guide
booms extending up the river from each end of the main span;
that such guide booms were not maintained; and that in conse-
quence thereof the plaintiff suffered damage — is *held* to state a
cause of action, although it does not allege that the channel span
of such bridge has been designated by the engineer of the United
States in accordance with sec. 1605, R. S., or that there has been
any violation of sec. 1887, R. S. The obstruction to navigation
being unnecessary and unlawful, the fact that the channel span
had not been so established could not be a defense to an action for
actual damages, although it would be a defense to an action for
treble damages under sec. 1606, R. S.

[3. Whether a general allegation that a certain span "was duly estab-
lished as the channel span of said bridge," would be sufficient in
an action for treble damages under sec. 1606, R. S., is not deter-
mined.]

APPEAL from the Circuit Court for *Lincoln* County.

The case is thus stated by Mr. Justice TAYLOR:

"This appeal is from an order overruling a general de-
murrer to the complaint.

"The complaint was intended to set out a cause of action
in favor of the plaintiff on account of the obstruction of
the navigable waters of the Wisconsin river, by reason of
the maintenance of a railroad bridge by said defendant
across said river, which obstruction caused the destruction
of a raft of lumber owned by the plaintiff, while he was

attempting to pass such raft between the abutments of said bridge.

"There are two counts or statements of the cause of action set out in the complaint. In the first statement of the cause of action, after alleging that prior to November 29, 1878, the defendant had constructed a bridge over said river [at or near the village of Woodman, in Grant county], and alleging that the river is a public highway and navigable for boats and rafts, the plaintiff makes the following allegations:

"'That defendant built said bridge, with stone abutments, piers, and piles driven into the bed of the stream and extending into deep water and across said river, and making the main span, towards the west end of said bridge and the right side of said river, the only available passage for boats and rafts of lumber and logs, which said span was duly established as the channel span of said bridge; and that defendant accordingly constructed guide booms at each end of said span and extending up the river, to secure the passage of boats and lumber through the said channel, and maintained the same for a number of years, and until the year 1878, when said guide booms were removed as hereinafter set forth.

"'That a short distance above said bridge there is a bend in the river, which said river, from flowing nearly west, flows southerly from said bend, through the bridge, and that all the principal current and volume of said river is thus swept towards the right bank, and against the west end of said bridge, and through the channel span aforesaid; and that there is an island in the river, just above the bridge, and extending from the middle of the river nearly to the left side, so that the only natural passage at the point mentioned is on the right side of the river, and without the guide booms aforesaid no boats or rafts of lumber could pass the said bridge in safety.

" ' Plaintiff further alleges that in the year 1878, and for several years prior to that time, he was engaged in running rafts of lumber from the upper Wisconsin to points on the Mississippi river, into whose waters the Wisconsin flows; that on or about the 29th day of November, 1878, he arrived at said bridge with a fleet consisting of four rafts of lumber, consigned to St. Louis, Missouri; that plaintiff approached said bridge, expecting that defendant still maintained the guide booms aforesaid, as, with plaintiff's knowledge, it had done theretofore; but that defendant had wilfully, negligently, and carelessly removed the said guide booms, and failed to maintain the same; and, in consequence thereof, the plaintiff's rafts were swung around and driven by the current with great violence upon defendant's said bridge, and wrecked, and large quantities of his said lumber broken up, lost, and destroyed.'

" This is followed by statements showing the damage sustained by the plaintiff in attempting to pass the bridge with his raft.

" In his second statement of facts the plaintiff alleges that the defendant wrongfully and unlawfully built the bridge over the river near Woodman, in Grant county, and maintained it there without guide booms or other mode of construction to effect a safe passage of boats, lumber or water craft. He then alleges the navigability of the river at the place, and that he was engaged in running logs and lumber on said river during the year 1878, and for several years prior thereto. These allegations are followed by the following statements:

" ' Plaintiff further alleges that in disregard of the plaintiff's right, and the rights of the public, to the free and uninterrupted use and navigation of said Wisconsin river, the defendant wrongfully and unlawfully built said bridge with stone abutments, piers, and piles driven into the bed of the stream and extending out into deep water and across said

JANUARY TERM, 1884. 63

Sweeney vs. The Chicago, Milwaukee & St. Paul R'y Co.

river, and thereby blocking up and obstructing the same, so that no boats nor rafts of lumber or logs could in the year 1878, nor can they now, pass the said bridge in safety; and that said bridge was in said year 1878, and ever since has been, and still is, a hinderance and obstruction to the navigation of said Wisconsin river.

" ' Plaintiff, further complaining, alleges that on or about the 29th day of November, 1878, he attempted to pass the said bridge with a fleet consisting of four rafts of lumber, consigned to St. Louis, Missouri; that said rafts were skilfully and carefully managed by a competent pilot and crew, but it was impossible to avoid all the abutments, piles, and piers of said bridge; and that plaintiff's said rafts were driven by the current of said river, with great violence, upon defendant's said bridge, and wrecked, and large quantities of his said lumber broken up, lost, and destroyed; and that said collision did not occur through any fault or neglect on the part of the plaintiff or his agents.' "

*C. W. Briggs*, of counsel, for the appellant, contended that as the bridge was below the city of Portage the defendant could not be negligent in not maintaining guide booms until the channel span had been established as provided in sec. 1605, R. S.; but the complaint fails to allege that it had been so established. So far as the complaint shows the defendant has complied with all the requirements of sec. 1837, R. S. The power to determine the manner of construction and the changes and modifications of bridges on the Wisconsin river having been vested by the legislature in the secretary of war of the United States or such engineer as he should designate, it would seem that the defendant could not be held negligent so long as it complied with all orders or directions made or given by them.

For the respondent there was a brief by *Bump, Hetzel & Canon*, and oral argument by *Mr. Bump*. They argued, that the complaint states a cause of action at common law,

independent of any statute. Admitting for the purposes of argument that the bridge with the guide booms as constructed was a lawful structure, still the removal of such booms was an act of negligence which rendered the company liable. *Weisenberg v. Town of Winneconne*, 56 Wis., 667; *Metallic C. C. Co. v. Fitchburg R. R. Co.*, 109 Mass., 277; *Sweeny v. O. C. & N. R. R. Co.*, 10 Allen, 368, 377; 4 Wait's Act. & Def., 653, 657. See, also, Moak's Underhill on Torts, 28, 29; *Cahill v. Eastman*, 18 Minn., 324; *S. C.*, 10 Am. Rep., 184; *Pollett v. Long*, 56 N. Y., 200; *Milwaukee G. L. Co. v. Schooner " Gamecock,"* 23 Wis., 144. The fact that the booms were maintained for years to aid the passage of lumber, is presumptive that they were necessary, even under the rules of the war department; and the company had no more right to remove them than a corporation or town would have the right to remove the railings or approaches to a bridge which was built and maintained under lawful authority. As to what constitutes actionable negligence, see *Fitts v. Cream City R. R. Co.*, 59 Wis., 323; *Palmer v. Andover*, 2 Cush., 600; *Hickok v. Hine*, 13 Am. Rep., 255. The Wisconsin river is a public highway, and the principles of law which render a railroad company liable for a defective highway crossing are applicable. It was the duty of the company, under sec. 1836, R. S., to maintain the necessary approaches or guide booms, and having placed such booms it was negligence to remove them. *Village of West Bend v. Mann*, 59 Wis., 69; *Titcomb v. Fitchburg R. R. Co.*, 12 Allen, 254; *Comm. v. Deerfield*, 6 id., 455; *Parker v. B. & M. R. R.*, 3 Cush., 107; *Yates v. Judd*, 18 Wis., 118; *Boston & H. S. Co. v. Munson*, 117 Mass., 34; *White v. Quincy*, 97 id., 430; *Brown v. C. & S. R. R. Co.*, 12 N. Y., 486; *Rochester W. L. Co. v. Rochester*, 3 id., 463; *Wooley v. G. S. & N. R. R. Co.*, 83 id., 121. The second count of the complaint states a cause of action under sec. 1598, R. S., and at common law. The company had no

right to build or maintain the bridge except as specially authorized by law, and when a bridge is built and maintained or managed in such a manner as to materially obstruct and impede navigation, whereby a person using due care is damaged, an action will lie. *Wis. River Imp. Co. v. Lyons,* 30 Wis., 61; *Walker v. Shepardson,* 2 id., 384; *Barnes v. Racine,* 4 id., 454, and note; *Weisenberg v. Town of Winneconne,* 56 id., 667; *Milwaukee G. L. Co. v. Schooner "Gamecock,"* 23 id., 144; *State v. Parrott,* 17 Am. Rep., 5; *Blanchard v. W. U. Tel. Co.,* 60 N. Y., 510. The allegation in the first count that the main span of the bridge was duly established as the channel span is sufficient to show that it was established in the manner required by sec. 1605, R. S. As to the effect of the word "duly" in pleading, see *Town of La Pointe v. Town of Ashland,* 47 Wis., 251; *Jones v. Davis,* 22 id., 422; *Town of Pine Valley v. Town of Unity,* 40 id., 682; *Kusterer v. Beaver Dam,* 52 id., 146. The remedy, if any, was by motion to make more definite and certain, not by demurrer. *Clark v. C., M. & St. P. R'y Co.,* 28 Minn., 69.

TAYLOR, J. After a careful reading of the complaint we think the demurrer was properly overruled.

The learned counsel for the appellant insists that because the complaint does not in express terms show that in the construction and maintenance of said bridge the defendant has violated the provisions of either sec. 1605 or sec. 1837, R. S. 1878, it does not show a cause of action. These sections read as follows:

"Section 1605. Every person or corporation that maintains any dam or bridge across the Wisconsin river, shall also maintain at one side of the slide over such dam, and at each end of the channel span of such bridge, a guide boom, constructed in such manner and of sufficient length to secure the safe passage of all rafts, lumber and water crafts over the slide of such dams, and through the channel span of such.

bridge; and such boom, at its upper end, shall be securely attached to some pier or other firm structure. This section shall not apply to any bridge below the city of Portage, until the channel span thereof shall have been established by the engineer of the United States in charge of the improvement of said river, nor to the bridge across said river within the limits of said city."

"Section 1837. When it shall be necessary, in the construction of a railroad, to erect a bridge or arched culvert over any highway, street, turnpike, or plankroad, it shall be sufficient to construct the same so as to give a clear passage way of twenty feet, or two passage ways of fourteen feet each. All bridges now or hereafter constructed across the Fox or Wisconsin river shall be constructed or modified, and such reasonable alterations therein made, from time to time, as may be required, and according to plans approved by the secretary of war of the United States, or such engineer as he shall designate, by any railroad corporation owning or using the same."

Sec. 1605 is, clearly, passed to protect those having occasion to navigate the stream bridged, against the owner of the bridge. This is evident from the fact that the next section gives the party injured by the neglect of the bridge-owner to maintain the piers and booms, treble damages. The exception in the last part of the section, in favor of bridges below Portage, until the channel span shall be designated by the engineer of the United States, would, undoubtedly, relieve the owner of such bridge from an action to recover treble damages for an injury occasioned by neglect to maintain such piers and booms at the channel span, if such span had not been designated by such engineer. If this were an action to recover treble damages under sec. 1606, R. S., the second statement of the cause of action would be clearly insufficient, and the first would probably be held so, notwithstanding the general statement that "said span was

duly established as the channel span of said bridge;" but for the purposes of this appeal we are not called upon to decide and do not decide that question. In our view of the law it would be no defense to this action if it were shown that the engineer of the United States in charge, etc., had not in fact established the channel span.

It is clear the legislature could not have intended to relieve a railroad company, or any other company or person, from liability for any unreasonable or unnecessary obstruction of the navigable waters of the Wisconsin river, either by the erection of bridges over the same, or by maintaining any other structures on or over the same; and if it had so intended, it is equally clear that such action or intent of the legislature would not justify such obstruction. The right of the citizen to navigate the waters of the Wisconsin river upon such part of it as is in fact useful for navigation, is secured by a higher authority than the legislature of this state. This right was first secured by article IV of the Ordinance of 1787, which, among other things, provides that "the navigable waters leading into the Mississippi and St. Lawrence, and the carrying places between the same, shall be common highways, and forever free, as well to the inhabitants of the said territory as to the citizens of the United States, and those of any other states that may be admitted into the confederacy, without any tax, impost, or duty therefor." This provision of the ordinance was adopted as a part of the constitution of this state in the identical words of the ordinance. See sec. 1, art. IX, Const.

The navigability of the waters of the Wisconsin river, so far as the same are navigable in fact, is protected not only by the common law of the country, but by an express constitutional provision. There can be no contention, therefore, that the legislature has the power to entirely obstruct the navigation of said river. That the legislature has the power to authorize the building of bridges across the navigable

waters of the Wisconsin, notwithstanding the Ordinance, the provisions of our constitution, and the common law, must also be admitted. But that power must be subordinate to the rights of navigation, and bridges so authorized to be constructed and maintained must be so constructed and maintained as not to materially or unnecessarily obstruct such navigation. This was so held in the great leading case of *Pennsylvania v. Wheeling & B. Bridge Co.*, 13 How., 518, as well as the following cases: *Columbus Ins. Co. v. Peoria Bridge Asso.*, 6 McLean, 70; *Columbus Ins. Co. v. Curtenius*, id., 209; *Jolly v. Terre Haute Draw-Bridge Co.*, id., 237; *U. S. v. New Bedford Bridge*, 1 Wood. & M., 401; *Comm'rs of St. Joseph Co. v. Pidge*, 5 Ind., 13; *Comm. v. Breed*, 4 Pick., 460; *Depew v. Trustees of W. & E. Canal*, 5 Ind., 8; *Dover v. Portsmouth Bridge*, 17 N. H., 200; *Illinois R. P. Co. v. Peoria Bridge Asso.*, 38 Ill., 467; *State v. P. & K. R. R. Co.*, 57 Me., 402; *Miss. & M. R. R. Co. v. Ward*, 2 Black (U. S.), 485; Cooley's Con. Lim. (5th ed.),731. Upon the main question of the subordination of the rights of a bridge or other company, which may be authorized to build and maintain a structure across the navigable waters of this state, to the right of navigation, Chief Justice DIXON, in the case of *Milwaukee G. L. Co. v. Schooner " Gamecock,"* 23 Wis., 151, says: "The great question in this case is that which relates to the duty of the company to lay its pipes so as not to interfere with the rights of navigation. We have examined this question with much care, and are satisfied that the charge of the learned judge is a correct statement of the law applicable to the case. . . . The question is settled by authority, and we fully sanction and affirm all that the court below said to the jury upon it." The charge of the circuit judge, referred to by the learned chief justice, stated, among other things, "that although the plaintiff had the right to lay its pipes at the bottom of the river, it must lay them in such manner as not to interfere with the navigable

capacity of the river, so that vessels may pass up and down the river as heretofore in the free exercise of all the rights and privileges incident to the management of ships." In another part of his charge, the circuit judge, referring to the right to build railroad and other bridges across navigable streams, says: "It necessarily follows, from all this, that all the qualifications of this kind of legislation, authorizing these different constructions, are and must be subordinate to the great right of navigation."

The Wisconsin river is a stream over which the regulations of congress extend. *The Montello,* 20 Wall., 430. In regard to such streams Judge COOLEY says: "In general terms it may be said that the state may authorize such constructions, provided they do not constitute material obstructions to navigation; but whether they are to be regarded as material obstructions or not, is to be determined in each case upon its own circumstances. The character of the structure, the facility afforded for vessels to pass it, the relative amount of traffic likely to be done upon the stream and over the bridge, and whether the traffic by rail would be likely to be more incommoded by the want of the bridge than the traffic by water with it, are all circumstances to be taken into account in determining this question. It is quite evident that a structure might constitute a material obstruction on the Ohio or Mississippi, where vessels are constantly passing, which would be unobjectionable on a stream which a boat only enters at intervals of weeks or months. The decision of the state legislature that the erection is not an obstruction is not conclusive, but the final determination will rest with the federal courts, who have jurisdiction to cause the structure to be abated, if it be found to obstruct unnecessarily the traffic upon the water. Parties constructing the bridge must be prepared to show, not only the state authority, and that the plan and construction are proper, but also that it accommodates more than it impedes the

general commerce." Perhaps the last remark of the learned author, as to the necessity of the bridge-owner showing that his bridge accommodates more than it impedes the general commerce, is not a true test as to his right to maintain the bridge. If it does not in fact materially or unnecessarily obstruct the water navigation, it would seem sufficient without investigating the comparative aid which the bridge affords to the general commerce of the country.

In *Blanchard v. W. U. Tel. Co.*, 60 N. Y., 510, the court of appeals says: "In furtherance of commerce and travel, slight obstructions, and such as may temporarily interrupt the passage of vessels or occasion a cursory inconvenience, but which do not materially impair navigation, are made lawful and tolerated by reason of the great public good that results from these inconsiderable disturbances of the right of the public to the free and uninterrupted use of navigable streams. Upon this principle the bridging of streams, the building of wharves, and other like acts, are permitted; the necessary obstruction in every case being reduced to its minimum. If there is an unnecessary interference with the navigation, the act becomes unlawful by reason of the excess of the limits within which obstructions are allowed in the interest of the public." The rule above stated is sanctioned by this court in *Barnes v. Racine*, 4 Wis., 454, 466.

Within the rule established by the courts, the allegation in the complaint in the first statement of the cause of action, that the main channel of the river was so obstructed by the stone abutments, piles, and piers of the defendant's bridge that no boats or rafts could pass said bridge in safety without guide booms extending up the stream from each end of the span, clearly shows an unnecessary and unlawful obstruction of navigation upon the river; and it could be no defense that the engineer of the United States had not designated such span as the channel span. If there was, in fact, another and safer way to pass said bridge, or if the engineer

JANUARY TERM, 1884. 71

in charge had designated another place as the channel span, and the defendant had maintained the proper booms at such designated span, so that the plaintiff could have passed his raft in safety at such other place, such facts might be a defense to the plaintiff's action. Upon the statement in the complaint no presumption of law arises that such was the fact. Such facts are defensive matter to be set up by the answer.

The allegations of unlawful obstruction made in the second statement are equally conclusive against the defendant upon the question of unnecessary obstruction to the navigation of the river. In *Enos v. Hamilton*, 27 Wis., 256, this court says: "If the obstruction of the river so that it could not be navigated was lawful, and continued only for a reasonable length of time, according to the course of navigation, or if it was made necessary by reason of misfortune or inevitable accident, and without fault on the part of the defendants, these were matters properly coming from the defense, and which need not be negatived by the complaint." As to the sufficiency of the allegations of the complaint to show an unlawful obstruction, see *Illinois R. P. Co. v. Peoria Bridge Asso.*, 38 Ill., 467.

*By the Court.*— The order of the circuit court is affirmed, and the cause is remanded for further proceedings according to law.