CAPT. SOMA BOAT LINE, INC., Appellant, v. CITY OF WISCONSIN DELLS, Respondent.

*No. 75–291.   Argued June 1, 1977.—Decided July 1, 1977.*
(Also reported in 255 N. W. 2d 441.)

11

For the appellant there were joint briefs by *Bannen Law Office* of Wisconsin Dells, and *Boardman, Suhr, Curry & Field* of Madison, and oral argument by *Francis Bannen* of Wisconsin Dells and *John E. Knight* of Madison.

For the respondent there was a brief by *Kramer, Nelson and Kussmaul,* and oral argument by *John N. Kramer,* all of Fennimore.

BEILFUSS, C. J.   The plaintiff-appellant, Capt. Soma Boat Line, Inc., owns and operates recreational-type commercial boat tours in the Upper Dells and Lower Dells of the Wisconsin River in and near the City of Wisconsin Dells. It is a riparian landowner with about 500 feet of shoreline in Crandall's Bay. It maintains its passenger loading docks, a maintenance dock, a ticket office, a parking lot and a waiting and recreational building. The only water access to and from Crandall's Bay and the Wisconsin River is through a small stream known as Barney's Run. The defendant-respondent, City of Wisconsin Dells, maintains a highway bridge over Barney's Run known as the Illinois Avenue bridge. Boats traveling to and from the bay must pass underneath this bridge.

In 1909 or 1910, a utility company erected a dam known as the Kilbourn dam in the Wisconsin River. The back water from the dam created Crandall's Bay. It covers about 12.3 acres of land; is 12 feet deep in some areas and very shallow in others, and not navigable there.

At about the same time the dam was constructed, the Illinois Avenue bridge was built. The bridge is on a 500 to 600 foot causeway. The bridge itself is basically a concrete structure. It is approximately 21 feet long— 17 feet wide. It carriers water, sewer and utility lines and has a traffic lane about 13 feet wide[1] which accommodates foot traffic and one-way vehicular traffic. Underneath the bridge the clearance is about 17 feet wide and eight and one-half feet from the water at normal level to the bottom side of the bridge.

Illinois Avenue, with the bridge, is the only access to the land area surrounding Crandall's Bay. There are a few private residences, three of which have small docks, some boat repair facilities, a public ramp for small boats, a major water well, pumping station and repair shops for the City of Wisconsin Dells on the west side. A substantial portion of the land adjacent to the bay is zoned for conservation and will not be commercially developed.

Scenic boat tours have operated from Crandall's Bay since 1931. Capt. Soma Boat Line has operated from the bay since 1941. The present owners of Capt. Soma acquired their interest in 1957. Capt. Soma has six boats which operate from Crandall's Bay. The four largest are: the Kilbourn, with a passenger capacity of 65 and requires a clearance of eight feet one inch; the Red Eagle, with a passenger capacity of 49 and a required clearance of seven feet seven inches; the Tiger Lady, with a passenger capacity of 44 and a required clearance

---

[1] The record is not clear as to the exact dimensions, but the above is adequate for this opinion.

of seven feet six inches; and the Sioux, with a passenger capacity of 40 and a required clearance of seven feet one inch. The two largest boats, the Kilbourn and the Red Eagle, were purchased in 1969 and 1964 by the present owners after they acquired the boat line. The other boats and two smaller ones were acquired in the original transfer from Soma. The two smallest boats are not used frequently because of limited seating capacity.

There are five additional commercial tour boat companies which operate in the Upper Dells from Wisconsin Dells. Capt. Soma is the only one that operates from Crandall's Bay. The others all use the municipal dock, for which they pay a fee, or an adjacent private dock. Capt. Soma could use the municipal dock if it chose to do so. The boats primarily used by all the other boat companies are larger than the Kilbourn and could not pass under the Illinois Avenue bridge at normal water levels.

Occasionally during the commercial boating season, which is roughly May 15th to October 15th, high water levels prevent one or more of the Capt. Soma boats from passing underneath the bridge. In addition to the municipal dock the city has provided a floating dock on the river side of the bridge which Capt. Soma can use without a fee. When its boats cannot go under the bridge, Capt. Soma uses the floating dock. This causes some inconvenience to its customers and some additional expense to Soma.

Capt. Soma also attempted to prove that the bridge was in need of repair. The trial court rejected that contention. Soma also sought to prove the bridge constituted a safety hazard because the size of the bridge opening made it difficult to see approaching boats while going under the bridge. The trial court likewise rejected this claim because of the testimony that careful and prudent operation of the boats would minimize this danger.

Capt. Soma complains that the bridge creates an obstruction to navigation; that the bridge is a nuisance and asks that the nuisance be abated.

The city has been aware of the Capt. Soma complaints for several years. This matter was before this court before—*Capt. Soma Boat Line, Inc. v. Wisconsin Dells,* 56 Wis.2d 838, 203 N.W.2d 369 (1973)—wherein the court held ch. 31 of the statutes afforded no relief to the plaintiff. In recognition of the complaints the city has considered several alternatives in addition to the floating dock. The alternatives, as the city viewed them, were the construction of a new bridge ranging in cost from $160,000 to over a million dollars, or removing the bridge and building a road around the bay. The cost of the road, including land acquisition costs, it believes to be prohibitive.

Capt. Soma argues that it has a right to unobstructed navigation of the navigable waters of Wisconsin. More specifically it argues it has such a right on the Wisconsin River and Crandall's Bay. It contends that this right is guaranteed by the Northwest Ordinance of 1787, Wisconsin Constitution,[2] common law and statutory law.[3]

---

[2] Art. IX. *"Jurisdiction on rivers and lakes; navigable waters.* Section 1. The state shall have concurrent jurisdiction on all rivers and lakes bordering on this state so far as such rivers or lakes shall form a common boundary to the state and any other state or territory now or hereafter to be formed, and bounded by the same; and the river Mississippi and the navigable waters leading into the Mississippi and St. Lawrence, and the carrying places between the same, shall be common highways and forever free, as well to the inhabitants of the state as to the citizens of the United States, without any tax, impost or duty therefor."

[3] "30.10 *Declarations of navigability.* (1). . .

"(2) *Streams.* All streams, sloughs, bayous and marsh outlets, which are navigable in fact for any purpose whatsoever, are declared navigable to the extent that no dam, bridge or other obstruction shall be made in or over the same without the permission of the state."

Capt. Soma, through its presentation on appeal, argues that the Northwest Ordinance and our constitutional provision containing the phrase "forever free" refers to physical obstructions in a navigable waterway. The provision of the Northwest Ordinance and the constitution, more fully stated, is as follows:

". . . and the river Mississippi and the navigable waters leading into the Mississippi and St. Lawrence, and the carrying places between the same, shall be common highways and forever free, as well to the inhabitants of the state as to the citizens of the United States, without any tax, impost or duty therefor."

In *State v. Jackman,* 60 Wis.2d 700, 211 N.W.2d 480 (1973), the court held the provision prohibited a tax or impost duty imposed by any unit of government or riparian owner. At page 708, we stated: "Nor do we have any trouble with the words 'forever free.' " "Free" has been held not to refer to physical obstructions but to political regulations which would hamper the freedom of commerce. The "forever free" phrase does not apply to the issues herein.

"30.15 *Penalty for unlawful obstruction of navigable waters.* (1) *Obstructions Penalized.* Any person who does any of the following shall forfeit not more than $50 for each offense:

"(a) Unlawfully obstructs any navigable waters and thereby impairs the free navigation thereof.

". . .

"(4) *Obstructions are Public Nuisances.* Every obstruction constructed or maintained in or over any navigable waters of this state in violation of this chapter and every violation of s. 30.12 or 31.13 is declared to be a public nuisance, and the construction thereof may be enjoined and the maintenance thereof may be abated by action at the suit of the state or any citizen thereof."

"280.01 *Jurisdiction over nuisances.* Any person, county, city, village or town may maintain an action to recover damages or to abate a public nuisance from which injuries peculiar to the complainant are suffered, so far as necessary to protect the complainant's rights and to obtain an injunction to prevent the same."

The initial issue which must be determined is whether the Illinois Avenue bridge unreasonably obstructs navigation between the Upper Dells of the Wisconsin River and Crandall's Bay. Or as the appellant has stated it—"The [bridge's] obstruction is actionable only if it materially or unnecessarily obstructs navigation."

This court noted in *Capt. Soma Boat Line, Inc. v. Wisconsin Dells*, 56 Wis.2d 838, 847, 203 N.W.2d 369 (1973),[4] that municipalities have been delegated the power to construct bridges but are not authorized "to construct or maintain bridges that constitute an unnecessary obstruction or hazard to the free use of navigable waters." The bridge undoubtedly is an obstruction. The question becomes—is it unnecessary or unreasonable under the circumstances.

This court's decisions on obstructions to navigation demonstrate that reasonable obstructions to navigation have been permitted. In *Gates v. Northern Pacific R. Co.*, 64 Wis. 64, 69, 24 N.W. 494 (1885), this court stated, citing the *Wheeling Bridge Cases*, 9 How. 647 (1850), "[r]ailways may so obstruct and delay navigation to an extent reasonably necessary by bridges and other construction, but no further."

In *A. C. Conn Co. v. Little Suamico Lumber Mfg. Co.*, 74 Wis. 652, 43 N.W. 660 (1889), the court was discussing a dam placed in a river by a riparian owner when it made the following statements, but they are equally applicable to a bridge. "[I]t is obvious that it is not every obstruction placed in a navigable stream which is a nuisance . . . The owner must not so obstruct the stream as to materially impair its usefulness for the pur-

---

[4] *See Sweeney v. Chicago, Milwaukee & St. Paul Ry. Co.*, 60 Wis. 60, 67–68, 18 N.W. 756 (1884).

pose of navigation; but, if [the stream] only can be used for floating logs and timber, the riparian owner is bound not to obstruct its reasonable use for that purpose." *Id.* at 655–56. *Accord: Harrington v. Edwards,* 17 Wis. 604 (*586) (1863).

Whether an obstruction to navigation is unreasonable depends upon the facts and circumstances of the case. *Sweeney v. Chicago, Milwaukee & St. Paul Ry. Co.,* at 69. In *Sweeney* the court set forth some of the factors to be considered in determining whether the obstruction is unreasonable:

> "The character of the structure, the facility afforded for vessels to pass it, the relative amount of traffic likely to be done upon the stream and over the bridge, and whether the traffic by rail would be likely to be more incommoded by the want of the bridge than the traffic by water with it, are all circumstances to be taken into account in determining this question. It is quite evident that a structure might constitute a material obstruction on the Ohio or Mississippi, where vessels are constantly passing, which would be unobjectionable on [another] stream. . . ." *Id.* at 69.

An additional factor, not mentioned in *Sweeney,* but apparent from this court's decisions, is the alternatives available to the parties. What is reasonable in some circumstances because of available options may not be reasonable under other circumstances.

Reasonableness has been defined in *Bonnett v. Vallier,* 136 Wis. 193, 202–03, 116 N.W. 885 (1908), in these terms:

> "There is no certain test by which what is reasonable in any given case can be definitely measured. It is a matter resting in human judgment. . . .
> ". . . As applied to means to a legitimate end it suggests not necessarily the best or the only method, but one

fairly appropriate at least under all the circumstances.
. . .

"... It is what 'from the calm sea level,' so to speak, of common sense, applied to the whole situation, is not illegitimate in view of the end to be attained."

In considering whether the obstruction, *e.g.*, the bridge, was unnecessary or unreasonable, we start with the fact that Crandall's Bay did not exist prior to 1909 or 1910 and was not available for uses of today. It was man-made by virtue of the dam, itself an obstruction, and created the bay which became a navigable part of the Wisconsin River. The bay is of limited area and has no through stream navigability. It was necessary to provide access to property on the far side of the bay. It seems apparent the Illinois Avenue bridge was the most feasible means of doing so. We cannot conclude the bridge was unnecessary.

As to the reasonableness, several factors must be taken into consideration. The opening under the bridge was "high enough for launches to pass through" at the time it was constructed and until the larger boats were used. No complaints were made until the late 1960's, and then by the present owners of Capt. Soma. The original Capt. Soma knew the size of the opening beneath the bridge prior to its operations and the present owners also knew of this opening and its limitation. Capt. Soma asserts the doctrine of "coming to the nuisance" is only a consideration in the abatement of a nuisance and not as to the nuisance itself.[5] In *Abdella v. Smith*, 34 Wis.2d 393, 149 N.W.2d 537 (1967), we stated:

"A plaintiff, of course, is not *ipso facto* barred from relief in the courts merely because of 'coming to the nuisance,' but it is a factor which bears upon the ques-

[5] *Costas v. Fond du Lac*, 24 Wis.2d 409, 129 N.W.2d 217 (1964).

tion of whether the plaintiff used his land reasonably under the circumstances. See Prosser, *supra,* page 632, sec. 92; Walsh on Equity, page 192."

We believe the fact that the present owners knew of the limitation of the bridge before they purchased the riparian property and the larger boats is a factor to be considered in determining the question of reasonableness or the reasonable use of the property by Capt. Soma.

The fluctuating water levels in the bay are the result of the melting snow and rainfall in the upper reaches of the Wisconsin River and the presence and manipulation of some 27 upstream dams. The city had no voice in the construction of the dams nor their present operation. The high water comes from the river, not Crandall's Bay. The testimony varies as to the number of days the water level was such that the larger boats could not enter or leave Crandall's Bay, just as the seasons themselves vary. The estimates are from 16 percent to 40 percent of the time some or all of Soma's boats could not operate from Crandall's Bay. Capt. Soma itself kept no records as to the days it could not operate from Crandall's Bay (a fact difficult to understand in view of the length of this dispute), but relied upon the records of the utility company kept at the dam. The water level at the dam and water level at the bridge are related closely enough so that a fairly accurate calculation can be made of the days or part of the days when the water was too high to permit the large boats from passing under the bridge. There are, however, other facts that are important. There are days of high water and heavy current in the Narrows of the river when the conditions of the water are such that no commercial boats operate regardless of where they are docked. There are other days when the weather is so inclement that no boats operate. Further, although the boating season is roughly from May 15th to October 15th,

the heavy and profitable traffic is from June 1st to Labor Day. On the days of lower traffic it is more feasible to use the smaller boats.

Capt. Soma operated its entire business as a whole. Its owners could not testify as to whether one boat or any boat operated at a profit due to an inability to pass under the bridge.

The city on the other hand has, in effect, acknowledged the difficulties and inconvenience suffered by Capt. Soma on the days of high water levels. Under the circumstances present was its response reasonable? We believe it was. The city maintains a municipal dock that Capt. Soma can use for the same fee paid by other commercial boat operators. In addition, the city provided a small floating dock located just beyond the bridge on the river side. Capt. Soma could and did use this dock free of any charge. The city did explore the possibility of altering the bridge, building a new one or removing the bridge and constructing a new road around the bay. It determined it was not possible to alter the existing bridge in any meaningful way. To construct a new bridge with sufficient clearance to accommodate the larger boats at all times would not only require building the new bridge but reconstructing and raising the extensive causeway. The cost estimates for this project were estimated from $160,000 to over a million dollars. To build a road around the bay would be difficult and expensive because of the nature of the terrain and the probable problems in acquiring the necessary right of way.

It is obvious the financial burden to the city would be substantial. Illinois Avenue is not a major highway that carries heavy traffic loads. It is a city street that dead ends on the other side of the bay. To be sure, the city is obligated to provide a reasonable access to the far

side of the bay because of the public and private uses there. The bridge is old and probably will have to be replaced in days to come. At present it is structurally sound and adequate to accommodate the vehicular and foot traffic. In balancing the inconvenience and undetermined additional expense of Capt. Soma against the nature, the cause, the extent of the obstruction, the "coming to the nuisance," the alternatives provided, the alternatives available and the probable financial burden to the city, we conclude the city did not act in an unreasonable manner and that as an equitable matter it should not, under present circumstances, be required to abate the nuisance if it be one.

*By the Court.*—Judgment affirmed.