CROSSETT vs. THE CITY OF·JANESVILLE and another.

*Charter of Janesville—Grading of streets—Petition required—Presumption as to grade referred to in the petition.*

The charter of a city declares that its common council shall have full control of the streets, and power to establish the grades thereof, but provides that no street shall be graded without a recommendation in writing, signed by a majority of the resident owners of property situate thereon. *Held,*

1. That the city was liable to a lot owner for injury to his lot from the

Crossett vs. The City of Janesville and another.

grading of a street by order of the council without such a recommendation.

2. That where the grade of a street had been established by vote of the council, a recommendation subsequently presented by a majority of the resident owners of property on such street, that the same be graded, must be presumed to refer to the grade so established. And this will be so even if the proceedings in establishing such grade were not in all respects regular.

3. That after such recommendation, the council cannot grade the street to a grade differing from the one so established, without a *new* recommendation to that effect.

APPEAL from the Circuit Court for *Rock* County.

The action was brought by *Mary A. Crossett* against the *City of Janesville* and one *Barron*, to recover for injuries done to plaintiff's lots, bounded by Franklin street in said city, in consequence of the removal of earth from said street adjoining said lots, to a depth of from four to six feet; which removal is averred to have been made by the defendants unlawfully and negligently. The answer was, in substance, that on or about the 6th of August, 1866, a recommendation in writing was presented to the common council of said city, signed by a majority of the resident owners of the real property bounded by said Franklin street, asking said common council to cause said street, between two certain points (specified in the complaint), to be graded; that the lots here in question were situated between said points; that afterwards, about the 17th of September, 1866, said common council duly caused to be filed in the office of the clerk of said city, a plain and accurate specification of the proposed work, the grade of said Franklin street having been first duly established by said common council; that afterwards, on said 17th of September, 1866, said common council ordered said street, between the aforesaid points, to be graded, and fixed the time within which it should be done, etc.; and that the work was afterwards let, in the manner required by the charter, to the defendant *Barron*, by whom it was duly performed, etc.

It appears from the evidence given at the trial, that a "profile and grade" of a portion of Franklin street, including the part in front of plaintiff's lots, had been made and filed in the city clerk's office in 1854. A copy of it was also found in the books of the city engineer, but without evidence of its having ever been *filed* in that office. There was also found on file in the offices of the clerk and engineer, a "profile and grade" of the same portion of said street, made in 1857; but there was no evidence of its adoption by the city. There was evidence also that work had been done in grading said street in front of plaintiff's lots and elsewhere, prior to 1866; but whether the actual grade at that time corresponded with that delineated upon either of the papers above named, does not appear. The petition of property holders on Franklin street, referred to in the complaint, was put in evidence. The prayer of the petition is, that the council "cause to be graded" the part of Franklin street therein described.

The defendants offered to prove that Mr. Crossett, the husband of the plaintiff, had acted as plaintiff's agent in respect to the lots in question, ever since she owned them; that he procured and circulated the recommendation above mentioned, and signed it in her behalf; and that he was told what the excavation would be in front of her property, and said he did not care, he wanted them to go on with the grading. The court ruled out the evidence, holding it inadmissible unless accompanied by proof that Mr. Crossett "was specially authorized by the plaintiff to make those statements." The other evidence need not be stated.

The court instructed the jury that "for want of the necessary petition of a majority of the resident property owners on Franklin street, the city council had no power to cause that street to be worked to the grade established and fixed by the council in 1866;" that plaintiff was therefore entitled to recover in this action for all the direct and proximate damages to her premises caused by the grading in question; that as the work was done

JUNE TERM, 1871. 423

Crossett vs. The City of Janesville and another.

by *Barron* under the direction of the city council, etc., the recovery must be against both defendants; and that the measure of plaintiff's damages was the actual depreciation in the value of her lots by reason of the grading having been done at the time and in the manner it was done.

The court refused instructions, asked by the defendants, to the effect, that the common council of the defendant city has full control and power over the street in question, and the right to grade and improve the same; and, if it did so with ordinary care and skill, was not liable for damage in consequence of such grading and improvement.

Verdict for plaintiff for $1,300 damages; new trial denied; and defendants appealed from a judgment on the verdict.

The following are the provisions of the charter of Janesville (ch. 474, P. & L. Laws of 1866) which are relied upon by the respective parties in this case:

Section 1 of chapter 6 gives the common council "full control and power over and management of all streets, alleys, lanes and public grounds in said city," with power "to establish the grades of all such streets, lanes," etc.

Section 18 of the same chapter empowers the common council "to cause any street, highway, lane or alley," or any part thereof, "to be graded, worked, graveled, macadamized, paved or repaved" etc., etc., "as it shall deem necessary; *provided*, that no street, highway, lane or alley, or any part thereof, shall be graded, macadamized, paved or repaved, planked or replanked, without a recommendation in writing, signed by a majority of the resident owners of property which is bounded by such street, highway, lane or alley on which said work is proposed to be done or improvement made," except as thereinafter provided.

Section 24 of the same chapter provides that whenever it shall appear to the common council by petition or affidavit duly verified, that any street, etc., or any part thereof, in said city, should be graded, macadamized, paved, etc., and that a majority of the

resident owners of property bounded by such street, etc., refuse to sign the recommendation mentioned in section 18 of said chapter, the common council shall have power to appoint a committee, consisting of one alderman from each ward, to examine such street, etc., and report its condition, and whether in their opinion it should be graded, macadamized, etc.; and upon receiving the report of such committee the council is empowered to order such street, etc., to be graded, macadamized, etc., in the same manner and with the same effect as though a recommendation signed as above described, had been presented to the council.

*J. W. Sale*, for appellants, argued that in fixing the grade of a street, the property owners, under the charter of the defendant city, have no voice, but the power is lodged absolutely in the council; that if the grade fixed by it fails to meet the approval of the property owners, they may refuse to ask the council to grade the street, but the council may nevertheless cause the street to be graded by a proceeding under sec. 24, above recited. It seems clear, therefore, that when a recommendation is presented to the council, asking generally that a certain street be graded, it must be construed as asking the council to grade the street to such grade as, in the exercise of its best judgment, it may adopt; and especially must this be so where at the time the recommendation is presented no grade of the street to which it refers has ever been adopted, or where, although a grade has been previously adopted, the street has already been worked to such grade. Counsel contended that the evidence showed the latter state of facts to exist here. 2. The power given the council to fix the grades of the streets is a continuing power, under which grades may be changed and re-established from time to time at the discretion of the council. Charter, ch. 6, sec. 1; *Goodall v. Milwaukee*, 5 Wis., 32, 52; *Goszler v. Georgetown*, 6 Wheat., 593. 3. The city cannot be a trespasser upon its own streets while engaged in working them so as to render them safe and convenient for public use.

Charter, ch. 6, secs. 1 and 18; *Kimball v. Kenosha*, 4 Wis., 321. 4. A municipal corporation making an improvement solely for the benefit of the public, under ample authority, is not liable for consequential damages to property in the vicinity. *Alexander v. Milwaukee*, 16 Wis., 247; *Radcliff's Ex'rs v. Brooklyn*, 4 Coms., 195; *Wilson v. New York*, 1 Denio, 595; *O'Connor v. Pittsburg*, 18 Pa. St., 187. 5. Mr. Crossett having always acted as plaintiff's agent in the management of the property alleged to have been injured, plaintiff was bound by his acts and declarations. *Riley v. Suydam*, 4 Barb., 222; *Hopkins v. Mollinieux*, 4 Wend., 465; *Fleming v. Smith*, 44 Barb., 554.

*I. C. Sloan*, for respondent:

1. Towns, like other corporations, can exercise no powers except such as are expressly or impliedly delegated to them by the legislature. *Booth v. Woodbury*, 32 Conn., 118; *Webster v. Harwinton*, id., 131; *Allen v. Edgcomb*, 53 Me., 446. All powers not expressly granted by the charter of a municipal corporation, or necessary to carry out those powers, are denied. *Leavenworth v. Norton*, 1 Kansas, 432; *Parker v. Baker*, 1 Clarke Ch., 223; *Kyle v. Malin*, 8 Ind., 34; *Hooper v. Emery*, 14 Me., 375. Where a special power is conferred, and the manner in which it is to be exercised prescribed by statute, the validity of the acts done as under such grant of power depends on their strict conformity to the statute. *Kneeland v. Milwaukee*, 18 Wis., 411; *Myrick v. La Crosse*, 17 id., 442. See also *Zottman v. San Francisco*, 20 Cal., 96. Towns are liable to lot owners for damages caused by the negligent or improper construction of streets (*Smith v. Milwaukee*, 18 Wis., 67), and of course are liable for damages resulting from excavations which they have no authority to make. 2. The proceedings for grading Franklin street were illegal. (1.) The grade had been established in 1854. The charter (ch. 6, sec. 1) gives the power to establish the grades of streets, but not that to alter grades once established. The latter power cannot be inferred from the former. The withholding of it was necessary for the protection of lot owners.

*Oakley v. Williamsburg*, 6 Paige, 262.   (2.) If the council had the power to alter the grade, still the city would be liable for damages caused by such alteration.   *Goodall v. Milwaukee*, 5 Wis., 32; *Crawford v. Village of Delaware*, 7 Ohio St., 459. (3.) The recommendation must be understood as for the grading of the street upon the grade then already established; and it was a fraud on the property owners to change the grade after the recommendation was presented.   *Myrick v. La Crosse*, 17 Wis., 442.

. The following opinion was filed at the January term, 1871:

COLE, J.   Assuming that the common council of the city of Janesville had power under the charter to change the grade already established, we still think the city was liable to the plaintiff for all damages sustained by reason of grading the street according to the altered grade.     For, while the charter enacts that the common council shall have full control over the streets of the city, and establish the grades thereof (section 1, chap. 6 of the charter, P. & L. Laws of 1866, chap. 474), yet it clearly provides that *no street shall be graded without a recommendation in writing, signed by a majority of the resident owners of property situated on the street which it is proposed to grade* (section 18, same chapter).     Now it is not claimed, or pretended, that a majority of the resident owners of property on Franklin street recommended in writing that the grade established in 1866 be made; and for the want of this necessary petition the common council had no authority to execute the work.   This recommendation was absolutely essential and necessary to authorize the common council to make the grade according to the changed grade; and the common council had no power to proceed without it, except under the 24th section; and there is not a particle of evidence which tends to show that they attempted to proceed under the latter section.   There is not even a pretense that it was made to appear to the common council, by affidavit or petition duly verified, that it was necessary Franklin street

should be graded, and that a majority of the resident owners of property bounded on that street refused to sign the recommendation therefor, so as to authorize the appointment of a committee to make an examination of the street, and to proceed with the work in the absence of the recommendation. But the common council seem to have proceeded upon the assumption that they had full authority to act under section eighteen above referred to, and that it was not necessary, after the grade was changed, that a recommendation should be presented asking that the street be graded according to the grade adopted. That this was an erroneous view of the requirements of the charter, seems to us very plain.

And, for the purposes of this case, it may be conceded that under the charter the common council has absolute power to establish the grade of a street, or change the grade once established, and that the property owners have no voice in the matter. But the charter very clearly imposes this restriction upon the power of the common council, that no street shall be graded without a recommendation in writing signed by a majority of the resident owners of property on the street. True, there is the further power granted in section 24; but this grant only the more clearly shows that when the common council assume to execute the work under section 18, they have no authority to proceed in the absence of the recommendation. The charter manifestly contemplates that the grade should first be established by the common council, so that the owners of property may have some means of judging how it will affect their lots when made. And if a majority of the resident owners of property which is situated upon the street, recommend that the street be graded as proposed, the common council can then proceed in accordance with the next section. All these various provisions of the charter in regard to the grading of streets are obviously intended to protect the owners of property whose lots are charged with the expense of the work. There is surely no ground for making a distinction between an altered grade and one first established;

and if a recommendation is essential to authorize the execution of the work in the one case, it is in the other. And it seems to us that there cannot exist a reasonable doubt as to the intention of the legislature upon this subject; and it manifestly was, to restrict and limit the powers of the common council to grade the streets of the city under the 18th section to cases where, after the grade is altered, or established in the first instance, the prescribed recommendation is presented for grading the street. This alone authorizes the common council to proceed and cause the work to be done. The validity of the acts of the city officers depends in the present case upon their having proceeded in conformity to the charter; and if they have caused Franklin street to be graded in disregard of the conditions upon which they were to exercise the power of grading streets, the city is liable for damages resulting from the illegal proceedings. And as the common council, therefore, had no authority to execute the altered grade without the proper recommendation asking that the street be graded according to the alteration, their action in the premises was illegal.

It appears from the evidence, that on the 6th of August, 1866, a recommendation was presented to the common council, which was signed by a majority of resident owners of property situated on Franklin street, asking that that part of Franklin street between Bluff street and the south line of section 25 be graded. But this was prior to the adoption of the altered grade by the common council, and of course cannot be considered a recommendation for the execution of the altered grade. If that recommendation has any significance whatever, it must be presumed to refer to the execution of some previous grade, either that of 1854 or that of 1857. We do not understand from the testimony that that part of Franklin street between Bluff street and the south line of section 25 had ever been graded according to either of these grades; indeed, the inference is irresistible, that it had not been so graded, because it appears from the evidence that Franklin street, north of the plaintiff's property,

was impassable for teams on account of a " big gully," and was not even safe for footmen in the night time.   So it is but fair to assume that this portion of Franklin street, designated in the recommendation, had never been entirely graded, according to either the grade of 1854 or that of 1857; and we must presume the recommendation related to some existing established grade. At all events, it is very obvious that it could not possibly refer to the changed grade, since that was not adopted until some weeks thereafter.   Nor would this presumption be overcome even if it appeared that the provisions of the charter had not in all respects been complied with in establishing those grades, for the property owners might not have been aware of the defect in the proceedings, if any existed; and the only presumption which can arise upon the recommendation is, that the signers asked that the street be graded according to the grade which they supposed had been established.   We therefore fully agree with the circuit court in the proposition, that, for want of the necessary petition of a majority of the resident property owners on Franklin street, the city council had no power to cause that street to be worked to the grade established and fixed by the council in 1866, and that the plaintiff was entitled to recover for all the direct and proximate damages to her property caused by the grade in question.   This point is decisive of the case.

*By the Court.*—The judgment of the circuit court is affirmed.

LYON, J., took no part in this decision, the cause having been tried before him at the circuit.

A motion for a rehearing was denied at the June term, 1871.