# CASES DETERMINED

AT THE

# August Term, 1911.

KELLEY, Respondent, vs. SALVAS, imp., Appellant.

*February 23—October 3, 1911.*

*Waters: Navigable rivers: Riparian owners: Separate ownership of river bed: Rights of navigation: Adverse possession: Extent: Easements.*

1. The owner of lands bordering upon a navigable stream who also owns the bed of the stream in front of his lands may separate the ownership of the lands including the bank from the ownership of the bed of the stream, and convey the shore and bank to one grantee and the bed of the stream to another.

2. Lands on the west side of a navigable river were platted by the owner, Water street, shown by the plat, being upon the bed of the stream, covered by shallow water. Afterwards, while still the owner of a certain lot 8 shown by the plat as being bounded on the east by Water street, he conveyed all that part of the river bed lying in front and east of lot 8, describing it as commencing on the east side of Water street and extending to what was called the "channel bank." *Held*, that thereby the ownership of the river bed east of lot 8 was so separated from the ownership of that lot that no third person thereafter acquiring title to lot 8 could claim that it extended to the middle of the river; and tax deeds issued upon subsequent tax sales of lot 8 must be deemed to have conveyed the lot with its boundaries as they existed according to the plat and at the time of such tax sales.

3. The owner of the bank of a navigable river whose title extends into the water but not to the middle of the stream, because the intervening part of the river bed has been conveyed to another, has the right, common to all persons, of passing over such in-

tervening land in boats so long as it is covered by the river, and the exercise of such common right cannot be made the foundation of title by adverse possession.

4. Where, under the circumstances above stated, the owner of the bank constructed upon the river bed, beyond his own boundary, a boat house and a dock, and maintained and used them for twenty years, he did not by such adverse possession acquire a title superior to that of the original owner extending beyond that part of the river bed covered by such structures and an area sufficient to lay a boat at the dock. [Whether he acquired incorporeal rights of greater extent, or whether the original owner may fill his land outside of the dock and thereby cut off access to the water, not determined.]

APPEAL from a judgment of the circuit court for Brown county: S. D. HASTINGS, Circuit Judge. *Affirmed.*

*Sol. P. Huntington,* for the appellant, cited, among other cases, *Norcross v. Griffiths,* 65 Wis. 599, 27 N. W. 606; *Wegge v. Madler,* 129 Wis. 412, 109 N. W. 223; *Farris v. Bentley,* 141 Wis. 671,.124 N. W. 1003; *Willow River Club v. Wade,* 100 Wis. 86, 76 N. W. 273; *Green Bay & M. C. Co. v. Telulah P. Co.* 140 Wis. 417, 122 N. W. 1062; *C. Beck C. Co. v. Milwaukee,* 139 Wis. 340, 120 N. W. 293; *Chicago & N. W. R. Co. v. Groh,* 85 Wis. 641, 55 N. W. 714; 30 Am. & Eng. Ency. of Law (2d ed.) 475, 502; 21 Am. & Eng. Ency. of Law (2d ed.) 437; 24 Am. & Eng. Ency. of Law (2d ed.) 979; *Priewe v. Wis. State L. & I. Co.* 93 Wis. 534, 67 N. W. 918; *Ill. S. Co. v. Jeka,* 123 Wis. 419, 101 N. W. 399; *Clark v. Potter,* 32 Ohio St. 49; *Ewing's Lessee v. Burnet,* 11 Pet. 41; *Yates v. Milwaukee,* 10 Wall. 497; *Lathrop v. Racine,* 119 Wis. 461, 97 N. W. 192; *Delaplaine v. C. & N. W. R. Co.* 42 Wis. 214; *Montgomery v. Shaver,* 40 Oreg. 244, 66 Pac. 923; *Matter of Mayor, etc. (In re Water Front),* 113 App. Div. 84, 98 N. Y. Supp. 1063; *Carroll v. Price,* 81 Fed. 137; *McCloskey v. Pacific C. Co.* 160 Fed. 794.

*C. W. Lomas,* for the respondent, cited *Drake v. Curtis,* 1 Cush. 395; *Tufts v. Charlestown,* 117 Mass. 401; *Wheeler-*

*v. Stone,* 1 Cush. 313; *Paine L. Co. v. Oshkosh,* 89 Wis. 449, 61 N. W. 1108; and other cases.

The following opinion was filed May 2, 1911:

TIMLIN, J.   The respondent brought this action of eject- ment against the appellant to recover all that part of Private Claim No. 1 on the west side of Fox river bounded on the west by the center line of Water street, on the north by the north line of lot 8 of the original plat of the town of Fort Howard extended eastward to the center line of Fox river, on the east by the center line of Fox river, and on the south by the south line of lot 8 extended eastward to the center line of Fox river.   The land in question forms part of the river bottom and is included in "Tract K" upon the follow- ing diagram:

Private Claim No. 1 west was one of the tracts allotted to the original French settlers (Am. State Papers, Vol. 4 Pub- lic Lands, p. 855, ed. 1834).   It was about twenty chains in width and extended westward from the Fox river far enough to contain a section of land, and it is assumed in this case that its eastern boundary was the thread or middle of the channel of the Fox river.   One Joel S. Fisk on April 22, 1850, became the owner of this part of Private Claim No. 1. On May 1, 1850, he joined with one John B. W. Arndt, who

owned a strip of land adjoining on the south, and together they platted and recorded the plat of "the town of Fort How-ard" on said lands. Lots 7 and 8 were on Private Claim No. 1, with Water street for their eastern boundary as above shown. This was also the eastern boundary of the plat. On May 9, 1850, and apparently before selling any other of these lots touching the water, Fisk conveyed to one Peak lot 7 "and part of Private Claim No. 1 west, described as follows: Com-mencing on the east side of Water street at the line between said Fisk and J. B. Murray (north line of plat) and follow-ing said line to the channel bank of Fox river; thence along said channel bank southerly 161 feet; thence westerly to the east line of Water street; thence along said east line north-erly 161 feet, to beginning." This included the river bed from the south line of lot 7 north to the north boundary of the plat and lying east of Water street and west of some in-definite line of deep water which we may consider the middle or thread of the stream. In 1853 Peak conveyed lot 7 to one, and in 1857 part of the bed of the river lying north of the north line of lot 8 extended east to another, and in 1859 that part of the river bed lying in front of lots 7 and 8 and east of Water street, being the tract K on the diagram, to another. The plaintiff showed such private title as the bed of a navi-gable river is subject to by deed originating under the last men-tioned conveyances to tract K. And the defendant showed title by tax deed to lot 8. At the time the plat was made and recorded lots 7 and 8 included the bank and ventured some-what into the shallow water. Water street represented sub-merged land lying in shallow water. Many of the same con-ditions still exist, except for some filling and except for the artificial structures hereinafter referred to. Under the fore-going conditions this controversy arose upon the defendant's claim to have acquired such right or title by adverse posses-sion to that part of tract K in front of lot 8 that he is now, after the lapse of more than twenty years, the owner thereof.

The jury returned a verdict as follows:

"(1) Was the defendant in the actual adverse possession, claiming title, of the portion of the property described in the complaint, covered by a boat house and dock and boats when landed at his dock, for a period of twenty years or more, prior to the commencement of this action, October 27, 1909 ? A. Yes.

"(2) If your answer to the 1st question should be 'Yes,' then answer this: What quantity of land east of the center of Water street was so occupied ?  A. A tract of land bounded south by a line coinciding with the south line of lot 8, extending east; on the east by a line twenty feet east from the east boundary line of said Water street, and parallel with the line of said street, and bounded on the north by a line parallel with the first described line, and thirty-five feet north of said line."

Before submitting this verdict the learned circuit judge ruled that no showing of adverse possession was made by the defendant except as covered and included in the questions above quoted, and the answer to the second question was drawn up for the jury, leaving a blank for the number of feet east from the east boundary of Water street and for the number of feet north of the south line of lot 8.   These figures were filled in by the jury.   In this way the verdict of the jury covered the fact of adverse possession by the boat house and docks in the first question and of extent of such actual occupation by the second question.

The appellant contends that the plat having given lot 8 the bank and a water front, this fixed the east boundary of that lot in the middle of the channel of the Fox river and subject to the usual incidents of riparian ownership of the bed of the stream.   He contends that Water street, never having been opened as a street, does not exist as a street, and in any event its presence on the plat would not affect the true eastern boundary of lot 8, but that that boundary would, notwithstanding the delineation of Water street on the plat, extend as aforesaid.   We think this fails to give due weight to the rule

that the owner of lands bordering upon a navigable stream and who owns the bed of the stream in front of his lands may separate the ownership of the lands including the bank of the stream from the ownership of the bed of the stream, and convey the shore and bank to one grantee and the bed of the stream to another. *Norcross v. Griffiths,* 65 Wis. 599, 27 N. W. 606; *Walls v. Cunningham,* 123 Wis. 346, 101 N. W. 696; *Minneapolis T. Co. v. Eastman,* 47 Minn. 301, 50 N. W. 82, 390; *Hanford v. St. P. & D. R. Co.* 43 Minn. 104, 42 N. W. 596, 44 N. W. 1144; *Eldridge v. Cowell,* 4 Cal. 80; *Gilbert v. Emerson,* 55 Minn. 254, 56 N. W. 818; *Concord Mfg. Co. v. Robertson,* 66 N. H. 1,.25 Atl. 718, 18 L. R. A. 679; 3 Farnham, Waters, § 724, p. 2194, and cases.

There is evidence in the instant case that the owner has done this. The execution and recording of the plat was given by statute the effect of a conveyance of the streets in fee to the municipality in trust for the public. *Thorndike v. Milwaukee A. Co.* 143 Wis. 1, 126 N. W. 881. A few days after this platting the owner of this part of Private Claim No. 1, apparently while he owned lot 8, conveyed away all that part of the bed of the river in front and east of lot 8, describing it as commencing on the east side of Water street and extending thence east into the river to what he called the "channel bank." These two acts must, we think, be considered as a sufficient separation and conveyance of the ownership of the submerged river bottom east of lot 8 from that lot, so that it can be definitely stated that no person thereafter acquiring title to lot 8 could claim that his eastern boundary line extended to the middle of the river. The subsequent sale of lot 8 for delinquent taxes and the tax deeds issued on such sale must be taken to have conveyed lot 8 with its boundaries as they existed according to the plat and at the time of the tax sale. We are not here concerned with the logic of this position, for we must in such cases follow precedent, and if it be once con-

ceded that the ownership of the bed of a river can be separated
from the ownership of the bank and the bed conveyed to a
different owner, that was done in the instant case.

More than twenty years before the action was commenced
the defendant built a walk or pier from lot 8 across Water
street to some small boat houses which he had constructed rest-
ing on piles driven into the river bed, mostly in Water street
west of its eastern boundary, but extending eastwardly over
the east boundary of Water street a short distance. There
was also a wharf or dock for a landing place connected and
used with these boat houses. In using this property the de-
fendant would leave his premises on lot 8 and proceed east-
ward on this narrow walk resting on stakes or piles driven
into the river bed until he crossed the greater part of what is
called Water street. Here he reached his boat houses, con-
structed in the same manner as this walk or approach, and
outside and east of these boat houses his wharf or dock. The
whole structure is quite flimsy. Defendant apparently used
the dock to unload wood, at first bringing the wood ashore
with a wheelbarrow on the approach mentioned, and at this
time he owned a scow which would carry thirty-five or forty
cords of wood. Some of the boat houses are not so old; only
one of the four boat houses has been erected more than twenty
years, and they are used to store boats in. About the dock
the defendant testified:

"There is a dock upon the property that goes further east
than the boat house about twenty feet. This dock or walk
goes twelve feet east of the boat house. On account of the
ice pulling up the dock I have had to build and take it up at
different times. In the middle of the summer the water be-
comes low, and I couldn't land there without extending the
dock. That has been true ever since I had my deed, and I
have had a dock ever since I have had my deed. This dock
is four feet four inches wide. I would drive it with a wooden
mallet. . . . After I sold a scow I got a sailboat. I would

tie up this sailboat by the dock. Drew three feet of
water when loaded, six or seven inches when light. . . .
The dock was not strong enough for a team of horses. Was
about four feet wide, two-inch planks. In the winter it some-
times would be lifted out with the ice. The dock was big
enough for my own use, and to make my living, by running a
wheelbarrow by the water. I came to that dock with my
boat. Other people would not come until they asked me.
I used it about fifteen years before I got my deed for the same
purpose, hauling wood and fishing. People went over that lot
with canoes and boats once in a while. . . . If they came
there they asked to come to my dock; everybody do that.
The dock was never as wide as lot 8."

The appellant contends that by this user for over twenty
years he acquired something more extensive than a mere title
to that part of the bed of the river covered by his boat houses
and dock and an area sufficient to lay a boat at this dock.
This is all that was given him by the verdict and judgment.
He argues that by such adverse possession he acquired title as
against plaintiff to all the bed of the stream lying in front of
the parcel actually covered by his dock and between that and
the middle of the channel. It is apparent there was disseisin
of the plaintiff, at his election, by the defendant sufficient to
entitle the plaintiff to maintain this action of ejectment, but
it does not follow that there was such disseisin as to institute
adverse possession or create an adverse title in defendant.
Sec. 3075, Stats. (1898); *Eaton v. Tallmadge,* 24 Wis. 217;
*Porter v. Hammond,* 3 Me. 188. So long as this land was
covered by the river, any person, whether riparian owner or
not, could lawfully pass over the same with a boat, whether a
mere passer-by or bound for any dock or wharf. So the
owner of the bank whose boundary extends into the water,
but ends there by reason of a lawful conveyance of that part
of the bed of the stream lying further out, could at all times
reach and leave his land by boat without any trespass on the
lands lying between him and the middle of the stream. He

would be exercising a right common to all, although peculiarly convenient to him, and one which the owner of the outlying submerged land could not lawfully prevent while the land remained in this condition. To gainsay this we must assert that the owner of the river bed may prevent persons passing over the same in boats on the water. To make such acts the foundation of title by adverse possession would conflict with settled law. *Johnson v. Boorman,* 63 Wis. 268, 22 N. W. 514; *Ill. S. Co. v. Bilot,* 109 Wis. 418, 84 N. W. 855, 85 N. W. 402; *Wheeler v. Stone,* 1 Cush. 313; *Drake v. Curtis,* 1 Cush. 395; *Casey's Lessee v. Inloes,* 1 Gill, 430, 497, 39 Am. Dec. 658; *Warwick v. Gonville,* 6 Times Law Rep. 447; *Beach v. Mayor, etc.* 45 How. Pr. 357. The law which gives title after adverse possession for a given number of years does not reach far enough to justify the defendant in his claim to have acquired title superior to that of plaintiff in these outlying submerged lands by reason of anything shown in the evidence here. In this action we do not pass upon mere incorporeal rights. *Racine v. Crotsenberg,* 61 Wis. 481, 21 N. W. 520. The appellant claims that this construction of the law and this action of the court below awards him a barren and worthless title, because the victorious plaintiff may now fill up the river outside of defendant's wharf and cut defendant off from access to the water. The plaintiff may also claim that his is a barren title if he is not permitted to do so. But that question has not yet arisen and we cannot undertake to decide it in this cause. *Cohn v. Wausau B. Co.* 47 Wis. 314, 2 N. W. 546, quoted with approval in *J. S. Keator L. Co. v. St. Croix B. Co.* 72 Wis. 62, 82, 38 N. W. 529; *Delaplaine v. C. & N. W. R. Co.* 42 Wis. 214, 226; *McCarthy v. Murphy,* 119 Wis. 159, 96 N. W. 531; *Smith v. Ford,* 48 Wis. 115, on rehearing (p. 159), 2 N. W. 134, 4 N. W. 462; *Priewe v. Wis. State L. & I. Co.* 93 Wis. 534, 67 N. W. 918; and *Willow River*

*Club v. Wade,* 100 Wis. 86, 76 N. W. 273, may with other cases be studied when this question is properly presented.

We find no error in the record, and the judgment of the circuit court should be affirmed.

*By the Court.*—Judgment affirmed.

SIEBECKER, J., took no part.

A motion for a rehearing was denied October 3, 1911.