MILWAUKEE-WESTERN FUEL COMPANY, Respondent,. vs. CITY OF MILWAUKEE, Appellant.

*November 20, 1912—February 18, 1913.*

*Navigable waters: Federal and state control: Bridges: Authority to be strictly followed: Nuisances: Obstruction of navigation: Municipal corporations: Approval of plans: Riparian rights: Access: Prescriptive rights: Plats: Construction: Width of street across river.*

1. Legislative authority to build and maintain a structure in navigable waters must be strictly followed, so far at least as any deviation therefrom would affect the degree to which it might impede or obstruct navigation.
2. While the state may authorize structures in and over the navigable waters of the state, which either impede or aid navigation, in the absence of any action by the general government in the same matter, yet when Congress has, by any expression of its will, occupied the field, that action excludes any right to the contrary asserted under state authority.
3. Approval by the chief of engineers and by the secretary of war of the plans for a bridge over a navigable river is tantamount to a declaration by the federal government that the bridge is not an unlawful structure so far as navigation is concerned, and no state authority or court can condemn or abate it as a nuisance on the ground that it unlawfully obstructs navigation.
4. The Kinnickinnic river is a navigable stream over which the federal government has exclusive control in respect to struc-

tures placed therein or thereover which affect its navigability; hence, where the plans for a bascule bridge over said river have been duly approved by the federal authorities, the fact that the common council of Milwaukee failed to approve such plans as required by an ordinance of the city does not make the bridge an unlawful structure.

5. A navigable river is as much a public highway as a street, and no private rights can be acquired therein by its user as such, no matter how long the use thereof in a certain manner may have been continued; nor can any individual insist upon a continuance of his public use of a navigable stream as against structures lawfully impeding or obstructing it.

6. A riparian owner's right of access to his property is from the front only, and does not extend to the use of a particular channel to reach that front.

7. Where a plat showed a cessation of street lines at the bank of a river, with a return of the same toward the center of the street, and a narrower passage over the river, *held*, that this was intended to represent a bridge only across the river and not to change the width of the street at that point.

TIMLIN and KERWIN, JJ., dissent.

APPEAL from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Reversed.*

Action at law under sec. 3180, Stats., to recover damages caused by the construction by the city of *Milwaukee* in 1908 of a new bascule bridge across the Kinnickinnic river in said city, which bridge, it is alleged, constitutes a nuisance in navigable waters, and to abate the same. The Chicago & Northwestern Railway Company and the Chicago, Milwaukee & St. Paul Railway Company were joined as parties defendant under the claim that they jointly with the city placed and maintained certain piling in the river for the purpose, in part at least, of protecting the approaches of the bridges of the railway companies. The Kinnickinnic river is navigable and runs nearly east and west in the city of *Milwaukee.* Kinnickinnic avenue is a public street running north and south in said city and crosses the river. In 1908, pursuant to authority previously granted therefor by the federal gov-

ernment and with its approval, the city built a new bascule bridge in place of an old swing bridge across Kinnickinnic river.   The plaintiff owns and operates a wood and coal yard on the south bank of the river situated partly east and partly west of Kinnickinnic avenue.   When the old bridge spanned the river the plaintiff found ready access through the south draw of the bridge and channel of the river to its wood-yard dock lying immediately west of the bridge.   When the city built the new bascule bridge the south abutment thereof completely closed the south channel of the river and prevented plaintiff from gaining access to that portion of its dock, lying immediately west of the abutment, through said south channel from the east, and the new pier of the Chicago & Northwestern Railway Company prevented plaintiff from gaining access to its dock, lying west of Kinnickinnic avenue, through the old south channel from the west.   The railway companies placed and maintained a row of piling along the south border of the new channel beginning near the north end of the south abutment of the bascule bridge, running in a westerly direction between the city bridge and the bridge of the Chicago, Milwaukee & St. Paul Railway Company and between the latter bridge and the bridge of the Chicago & Northwestern Railway Company, and for some distance west beyond said latter bridge.   By means of these structures the plaintiff was deprived of access by water to its dock lying west of Kinnickinnic avenue.   The diagram on page 250, in which the dotted lines show the old channels and the heavy black lines the new channel, will fully explain the situation.

The defendant city of *Milwaukee* in its answer claimed that the new bascule bridge, together with its approaches, abutments, fenders, and all its appurtenances, was placed and located within the easterly and westerly boundaries of Kinnickinnic avenue, where it crosses the river; that prior to its erection the plan thereof was approved by the secretary of war of the United States, as required by the federal stat-

utes; and that said bridge was constructed pursuant to such plan by the city as an improvement for the benefit of the public and to facilitate travel upon its streets, and especially Kinnickinnic avenue.

The jury found that the city had nothing to do with the placing or maintenance of the piling mentioned. They found further that the defendant the city of *Milwaukee,* by the manner in which it built the new bridge, impaired plaintiff's access to its dock lying west of Kinnickinnic avenue and assessed plaintiff's damages resulting therefrom in the sum of $500 for the period between September 1, 1908, and December 1, 1909. The court ordered judgment in favor of plaintiff for the amount of damages stated, and adjudged that the new bridge built by the city was a nuisance, and adjudged further "that its abatement at the present time is unnecessary; but that the refusal to abate the same at the present time shall be without prejudice to the right of the plaintiff to bring such action or actions as it may be advised, for its damages by reason of the continuance of said nuisance, and also to abate the same if the city of *Milwaukee* shall fail or neglect to abate the same, or shall fail or neglect to acquire, either by purchase or condemnation, the rights of the plaintiff infringed by the continuance of said nuisance."

From such judgment the defendant city appealed.

For the appellant there was a brief by *Daniel W. Hoan,* city attorney, and *Clifton Williams,* special assistant city attorney, and oral argument by *Mr. Williams.* They contended, *inter alia,* that the right of access means access to the front of the property. Gould, Waters, § 153; *Jenks v. Miller,* 14 App. Div. 474, 43 N. Y. Supp. 927; *Bond v. Wool,* 107 N. C. 139, 12 S. E. 281; *Clark v. Peckham,* 10 R. I. 35. No length of user of a particular channel can ripen into a right. *Thayer v. N. B. R. Co.* 125 Mass. 253. Approval of the plans by the proper federal authorities is conclusive that the bridge does not obstruct navigation. *People ex rel. Murphy v. Kelly,* 76 N. Y. 475; *Miller v. New York,* 109 U. S. 385, 3 Sup. Ct. 228; *U. S. v. P. & L. E. R. Co.* 26 Fed. 113; *Pennsylvania v. Wheeling & B. B. Co.* 18 How. (59 U. S.) 421; *Clinton Bridge,* 10 Wall. (77 U. S.) 454;

*Frost v. Washington Co. R. Co.* 96 Me. 76, 51 Atl. 806. The government may limit navigation to a prescribed channel. *South Carolina v. Georgia,* 93 U. S. 4; *Frost v. Washington Co. R. Co., supra.* A bridge constructed under proper federal authority is not a nuisance, no matter what its effect on navigation. *Texarkana & Ft. S. R. Co. v. Parsons,* 74 Fed. 408; *Georgetown v. Alexandria C. Co.* 12 Pet. 91; *Pennsylvania R. Co. v. B. & N. Y. R. Co.* 37 Fed. 129; *Gilman v. Philadelphia,* 3 Wall. 713; *Cardwell v. American B. Co.* 113 U. S. 205, 5 Sup. Ct. 423.

For the respondent there was a brief by *Van Dyke, Rosecrantz, Shaw & Van Dyke,* and oral argument by *G. D. Van Dyke.* They cited 1 Elliott, Roads & Streets (3d ed.) §§ 38, 39, 41, 44; Gould, Waters, § 135; 29 Cyc. 313; *Cummings v. Chicago,* 188 U. S. 410, 23 Sup. Ct. 472; *Maxwell v. Bay City B. Co.* 41 Mich. 453, 2 N. W. 639; *S. C.* 46 Mich. 278, 9 N. W. 410; *Potter v. Menasha,* 30 Wis. 492; *Barnes v. Racine,* 4 Wis. 454; *Sweeney v. C., M. & St. P. R. Co.* 60 Wis. 60, 18 N. W. 756; *Texarkana & Ft. S. R. Co. v. Parsons,* 74 Fed. 408; *Viebahn v. Crow Wing Co. Comm'rs,* 96 Minn. 276, 104 N. W. 1089; *Ballance v. Peoria,* 180 Ill. 29, 54 N. E. 428; *Montgomery v. Portland,* 190 U. S. 89, 103, 23 Sup. Ct. 735; *North Shore B. & D. Co. v. Nicomen B. Co.* 212 U. S. 406, 412, 29 Sup. Ct. 355; and other cases.

The following opinions were filed January 7, 1913:

VINJE, J.    As we understand it, the turning point in the case in the court below was the fact that the plans of the bridge were not approved by the common council, as required by sec. 9 of ch. IX of the city charter, and that the structure was held to be a nuisance on that ground.    There is a dispute between the parties as to whether or not the evidence shows they were so approved.    A careful examination of the evidence adduced by both sides satisfies us that the plaintiff made a *prima facie* case showing that the plans were

not approved, which was not overthrown by defendant's proof, and the case must be disposed of on the theory that there was a failure of approval of the plans by the council. It is claimed by the respondent that such failure of approval renders the bridge an illegal structure and a nuisance in navigable waters, under the following authorities: *Barnes v. Racine,* 4 Wis. 454; *Potter v. Menasha,* 30 Wis. 492; *Sweeney v. C., M. & St. P. R. Co.* 60 Wis. 60, 18 N. W. 756; *Pennsylvania R. Co. v. B. & N. Y. R. Co.* 37 Fed. 129; *Maxwell v. Bay City B. Co.* 41 Mich. 453, 2 N. W. 639; *Texarkana & Ft. S. R. Co. v. Parsons,* 74 Fed. 408; *Viebahn v. Crow Wing Co. Comm'rs,* 96 Minn. 276, 104 N. W. 1089. A careful examination of these cases will disclose the fact that they do not decide the question here presented.

In *Barnes v. Racine,* 4 Wis. 454, the city, under its general authority as a municipal corporation, proceeded to erect a bridge over Root river at a sharp angle in the stream. It had no statutory authority or federal authority to erect the bridge, and the court held that, as and where erected, it constituted an obstruction to navigation, and therefore by statute was made a nuisance. In *Potter v. Menasha,* 30 Wis. 492, it was held that the defendants, as trustees of the village of Menasha, had no authority whatsoever in any form to construct the bridge in question; that they were pure trespassers. The case of *Sweeney v. C., M. & St. P. R. Co.* 60 Wis. 60, 18 N. W. 756, turned upon a question of pleading, and it was there held that a complaint which alleged that the channel of the Wisconsin river was obstructed by a bridge built by the defendant below the city of Portage, in that no boats or rafts could pass in safety without guide booms extending up the river from each end of the main span, and that such guide booms were not maintained, in consequence of which plaintiff suffered damage, stated a cause of action, although it did not allege that the channel span of such bridge had been designated by the engineer of the United States in accordance

with sec. 1605, R. S. 1878, or that there has been any violation of sec. 1837, R. S. 1878. In *Pennsylvania R. Co. v. B. & N. Y. R. Co.* 37 Fed. 129, it was held that a complaint alleging that a bridge over navigable waters constituted an obstruction therein, need not allege that the bridge was not built in conformity with authority granted by the federal government, for if it was built in conformity therewith that could be shown as defensive matter, adding:

"If the contention for the demurrer is sound, it would devolve upon a plaintiff, whose right to the free navigation of public waters has been interrupted by an impediment which *prima facie* is a nuisance, to prove that the defendant acted under an assumed authority, but was not justified, because his acts were outside of the limitations of his authority; in other words, to negative facts by way of defense which are peculiarly within the knowledge of the defendant."

The demurrer to the complaint was therefore overruled.

In *Texarkana & Ft. S. R. Co. v. Parsons,* 74 Fed. 408, it appeared that Congress had authorized a railway company to construct a bridge with a draw of 130 feet in the clear, providing the plans were approved by the secretary of war, and providing further that the bridge should not be built until such plans were so approved. It was conceded that the openings of the draw were only 125 feet in the clear, and no evidence was offered to show that the plans had ever been submitted to or approved by the secretary of war.

The case of *Maxwell v. Bay City B. Co.* 41 Mich. 453, 2 N. W. 639, so far as applicable to any question in the case at bar, decided that a petition for leave to build a bridge across the Saginaw river in Bay City did not comply with the statutory requirements as to describing the location and character of the bridge. Therefore the supervisors acquired no jurisdiction to permit its construction. It was held the specified location was indefinite, because the petition proposed that it should be located somewhere between Second and Ninth

streets in Bay City, and it was shown that there were seven streets between the two named where it might be placed. The description of the bridge in the petition was also held defective. In *Viebahn v. Crow Wing Co. Comm'rs*, 96 Minn. 276, 104 N. W. 1089, 3 L. R. A. N. s. 1126, the defendants proceeded to erect an immovable bridge across the Mississippi river without any authority either from the state or the federal government, in express violation of secs. 9, 10, and 11 of the act of Congress of March 3, 1899 (30 U. S. Stats. at Large, 1151, ch. 425, Comp. Stats. 1901, pp. 3540, 3541).

It is apparent that none of the cases cited by the respondent touch the precise question presented by the case at bar, namely, Did the failure of the city council to approve the plan of the bridge constitute it an unlawful structure in navigable waters? It is undoubtedly the general doctrine of all courts that legislative authority to build and maintain a structure in navigable waters must be strictly followed, so far at least as any deviation therefrom would affect the degree to which it might impede or obstruct navigation. But it does not follow from such rule that an omission to conform to a prescribed mode of procedure in the erection of a structure, not affecting the question of navigation, renders it a nuisance on the ground that it unlawfully obstructs navigation.

The only attack made upon the bridge in this case is that it constitutes a nuisance because it unlawfully obstructs navigation. It is not claimed to be a nuisance for any other reason. Hence, if it can be shown that its obstruction of navigation is pursuant to lawful authority, it ceases to be a nuisance so far as this case is concerned.

The Kinnickinnic river is a navigable stream over which the federal government has exclusive control relative to structures placed therein or thereover which affect its navigability. 30 U. S. Stats. at Large, 1151, ch. 425, sec. 9 *et seq.* This statute provides that such structures across rivers and other waterways the navigable portions of which lie

wholly within the limits of a single state, may be built, provided the location and plans thereof are submitted to and approved by the chief of engineers and by the secretary of war before construction is commenced. It further provides that when plans for any bridge or other structure have been approved by the chief of engineers and by the secretary of war, it shall not be lawful to deviate from such plans either before or after completion of the structure unless the modification of said plans has previously been submitted to and received the approval of the chief of engineers or the secretary of war. In the present case the plans of the bridge were submitted to and received the approval of the chief of engineers and of the secretary of war, and the bridge was built without any deviation from or modification of the plans as submitted and approved. Such approval of the plan was tantamount to a declaration by the federal government that the bridge is not an unlawful structure so far as navigation is concerned. The federal government having declared it a lawful structure in navigable waters, no state authority or court can declare it unlawful or abate it as a nuisance on the ground that it unlawfully obstructs navigation. The declaration of the federal government is conclusive and final on that subject. *Gilman v. Philadelphia,* 3 Wall. (70 U. S.) 713; *Pennsylvania v. Wheeling & B. B. Co.* 18 How. (59 U. S.) 421; *Clinton Bridge,* 10 Wall. (77 U. S.) 454; *Wisconsin v. Duluth,* 96 U. S. 379; *Miller v. New York,* 109 U. S. 385, 3 Sup. Ct. 228; *Willamette I. B. Co. v. Hatch,* 125 U. S. 1, 8 Sup. Ct. 811; *Monongahela Nav. Co. v. U. S.* 148 U. S. 312, 13 Sup. Ct. 622; *Luxton v. North River B. Co.* 153 U. S. 525, 14 Sup. Ct. 891.

In *Pennsylvania v. Wheeling & B. B. Co.* 18 How. (59 U. S.) 421, it was held that an act of Congress which declared a bridge across the Ohio river a lawful structure, staid the execution of a judgment theretofore rendered by the supreme court of the United States declaring the bridge to be a nuisance and directing it to be abated, on the ground that

the power of Congress to regulate commerce, including the regulation of intercourse and navigation and, consequently, the power to determine what shall and what shall not be deemed in law an obstruction to navigation, is supreme and final, and that the act of Congress, though passed after the judgment was entered, operated to stay its execution in so far as it decreed the abatement of the bridge as a nuisance.

In the *Clinton Bridge Case*, 10 Wall. (77 U. S.) 454, it was held that an act of Congress declaring a bridge across the Mississippi to be a lawful structure abated a suit in chancery previously begun praying an injunction against the building of the bridge as a nuisance. The court say:

"In the present case the act of Congress having passed pending the suit, it gave the rule of decision for the court at the final hearing upon the same principle that the act in the *Wheeling Bridge Case* staid the execution of the decree directing its abatement."

Speaking of the power of Congress over navigable waters, the court in *Wisconsin v. Duluth*, 96 U. S. 379, 387, says:

"It is a power which has been exercised ever since the government was organized under the constitution. The only question ever raised has been how far and under what circumstances the exercise of the power is exclusive of its exercise by the states. And while this court has maintained, in many cases, the right of the states to authorize structures in and over the navigable waters of the states, which may either impede or improve their navigation, in the absence of any action of the general government in the same matter, the doctrine has been laid down with unvarying uniformity, that when Congress has, by any expression of its will, occupied the field, that action was conclusive of any right to the contrary asserted under state authority. The adjudged cases in this court on this point are numerous."

Re-affirming this doctrine, the court, in *Monongahela Nav. Co. v. U. S.* 148 U. S. 312, 335, 13 Sup. Ct. 622, says:

"Upon what does the right of Congress to interfere in the matter rest? Simply upon the power to regulate commerce. This is one of the great powers of the national government,

one whose existence and far-reaching extent have been affirmed again and again by this court in its leading opinions, and the power of Congress over such natural highways as navigable streams is confessedly supreme."

It must be held, therefore, that the failure of the city council to approve the plan of the bridge does not constitute it an unlawful structure in navigable waters. To hold otherwise would be to declare that unlawful which paramount authority says is lawful.

No matter how long plaintiff had used the south channel, it could acquire no prescriptive or other right to its continued use. *Kelley v. Salvas,* 146 Wis. 543, 131 N. W. 436; *Thayer v. New Bedford R. Co.* 125 Mass. 253. It was only exercising a public right to use navigable waters, which right was subject to control and even extinguishment by the proper authority. For a navigable stream is as much a public highway as a street and no private rights can be acquired therein by its user as such. Nor can any individual insist upon a continuance of his public use of a navigable stream as against structures lawfully impeding or obstructing it. *People ex rel. Murphy v. Kelly,* 76 N. Y. 475; *Frost v. Washington Co. R. Co.* 96 Me. 76, 51 Atl. 806; *Davidson v. B. & M. R. R.* 3 Cush. 91; *Cardwell v. American B. Co.* 113 U. S. 205, 5 Sup. Ct. 423.

The south abutment of the bridge cut off access to plaintiff's property from the side. The city did not cut it off from the front, for the jury found that it had nothing to do with the placing and maintenance of the piling described, and but for such piling plaintiff's dock could be reached through the new channel from the front. A riparian's right of access is from the front only. Gould, Waters (3d ed.) § 153; 1 Farnham, Waters, p. 302; *Keyport & M. P. S. Co. v. Farmers' Transp. Co.* 18 N. J. Eq. 13; *Jenks v. Miller,* 14 App. Div. 474, 43 N. Y. Supp. 927; *Bond v. Wool,* 107 N. C. 139, 12 S. E. 281.

Respondent's claim that Kinnickinnic avenue is not sixty-

six feet wide across the river we deem cannot be successfully maintained. This claim is based upon the plat of the property which shows a cessation of the street lines at the river bank and a return of the same toward the center of the street and a narrower passage over the river. See plat below.

We construe this narrower passage to be intended to represent a bridge merely, and not to indicate an intention to change the width of the street across the river. The location of the dock line on the plat to the center of the street shows that lines were not drawn with any great accuracy. It follows, therefore, that no part of the bridge structure is outside the limits of the street, and that no part of plaintiff's land has been subjected to any additional burden by reason of its construction.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.

TIMLIN, J. (*dissenting*). The judgment appealed from was rendered in an action at law tried before a jury pursuant to ch. 137, Stats., which authorizes the court in actions of this kind to award damages and also to order the nuisance abated. Judgment was rendered against the defendant for $500 damages as authorized by sec. 3181 of that chapter. The circuit court certified that the abatement of the alleged nuisance was unnecessary. He added to this, however, a provision that the refusal to abate the same should be without prejudice to the right of the plaintiff to bring such action or actions as it may be advised for its damages by reason of the continuance of said nuisance, and also to abate the same if the city defendant should fail or neglect to either abate the nuisance or acquire by purchase or condemnation the rights of the plaintiff infringed by the continuance of said nuisance. The jury had by its verdict found that the difference in amount between the rental value of plaintiff's premises with the bridge as it is, and that value if access thereto had remained as formerly for the period between September 1, 1908, and December 1, 1909, was $500. They further found that the value of plaintiff's premises had been depreciated by the erection of the bridge in question to the

extent that the difference in the fair market value of said premises before and after the construction of the bridge was $1,000. In rendering said judgment the court necessarily found that the erection and maintenance of the bridge in question was a nuisance and that the nuisance was a continuing one.

The bridge in question spans the Kinnickinnic river at the crossing of that river by a city street known as Kinnickinnic avenue, and plaintiff's land on its easterly side abuts on Kinnickinnic avenue, and on its northerly side, where its dock was maintained, it forms the southerly bank of the Kinnickinnic river. The Chicago, Milwaukee & St. Paul railroad crosses Kinnickinnic avenue at an acute angle a short distance north of the northerly bank of the Kinnickinnic river, and, maintaining this angle of divergence, the railroad crosses the Kinnickinnic river a short distance westerly or up-stream from the bridge in question on a railroad bridge, and continuing southerly forms the westerly boundary of plaintiff's land. From this it must be apparent that the farther north we move the northerly boundary of plaintiff's land the shorter will be that boundary, reaching practical zero at the apex of the triangle formed by the crossing of Kinnickinnic avenue by the railroad a short distance north of the north bank of the Kinnickinnic river. The Kinnickinnic river is a public highway and navigable. The common council of the city has power by ordinance to establish dock and wharf lines. City Charter, ch. IX. Dock lines had apparently been established in 1877, as admitted by pleadings and shown by several plats in evidence. The plaintiff's dock did not extend out to this dock line at the westerly or up-stream end thereof, and it gained some in length thereby. The abutment upon which the old city bridge turned was placed about midway in the old channel, so that when the bridge was swung open there was a clear passage on the southerly side of the center

Milwaukee-Western Fuel Co. v. Milwaukee, 152 Wis. 247.

abutment to plaintiff's dock which was available for the use of small vessels carrying wood, etc., from different ports on the Great Lakes to Milwaukee.

Acting under ch. 97, Laws of 1905, the city undertook the improvement of the harbor, including the Kinnickinnic river at this point. This improvement included the making of a new channel for the Kinnickinnic river at the place in question northerly of and nearly parallel with the old channel. Plans of this improvement and of a new bascule bridge made necessary thereby were submitted to and approved by the secretary of war. These plans contemplated that the new city bridge in question spanning the Kinnickinnic river at its crossing by Kinnickinnic avenue should be changed into a bascule bridge and so moved to the north that the aprons of the lift would span the new channel, while the former or old channel was closed by an abutment or approach or solid part of the bridge, whichever it may be called, cutting off the former access to plaintiff's dock from the down-stream side and through the old south channel. This left the only access to plaintiff's dock through the new channel, where the railroad bridge and the city bridge were much nearer together, and from this channel no practical use of plaintiff's dock could be made unless it extended its dock into the stream beyond the old dock line northerly to a point between these bridges at the bank of the new channel, which would leave it but a short and comparatively worthless dock property. The learned counsel for respondent sets forth the situation as he sees it in the following language:

"The alleged nuisance was primarily the south abutment of the new city bridge, which completely closed the channel through this south draw of the old city swing bridge and impaired its access to its dock lying immediately west of the abutment."

Ch. 97, Laws of 1905, requires the city officers in charge of such public improvement to prepare without unreasonable delay and submit for the approval of the common council a

plat covering the complete system of waterways, canals, slips, revetments, docks, and bridges intended to be constructed or improved, showing the exact location of all docks and bridges then built and encroachments upon the harbor lines, if any, and plainly indicating the changes and improvements which may be deemed necessary or advantageous in the interest of navigation or the community at large.   Sec. 9 of ch. IX of the city charter also provides that whenever the common council shall order the construction of any bridge, plans with bids thereon may be called for, and the board of public works shall select such bid and plan as shall seem to them to be best for the interest of the city and report the same to the common council, together with all other plans and bids for such bridge, with their reasons for their choice.   The council may approve or disapprove this selection and select any other plans and bids so reported.   The plans in evidence in this case do not conform in detail to the first mentioned requirements and no plans were submitted to the common council for approval. This last sufficiently appears from the evidence and is established by the judgment in favor of plaintiff by force of sec. 2858*m,* Stats.

The word "nuisance" represents a very general conception of legal wrong so vague in respect to bounds or definitions as to be almost useless in ascertaining and determining rights. True, many things might be specified which are in reason and by precedent clearly nuisances and other things which are not nuisances, but as said by Cooley: "It is very seldom indeed that even a definition of a nuisance has been attempted, for the reason that to make it sufficiently comprehensive it is necessary to make it so general that it is likely to define nothing."   Cooley, Torts (2d ed.) ch. 19.   There must be some violation of law, public or private, some injury, and that is always included in the term "nuisance."   When the illegal act offends only against law which exists for the protection of the public, it is *damnum absque injuria* as to all persons who only suffer loss therefrom common to all the affected public,

but actionable in favor of any person whose loss or damage is special and peculiar as contradistinguished from the damages accruing to the public generally.    There is in that case, as to such latter persons, the combination of illegal act and consequent damages which gives rise to a right of action.    The word "nuisance" has been sometimes used to describe an actionable wrong, where there is no trespass or other direct invasion of plaintiff's legal rights but only such indirect injury as flows from some unnecessary use of defendant's property or rights in such a way as to interfere with plaintiff's enjoyment of his property or rights.    We often read of private nuisances, but these will turn out in most, if not in all, cases to be wrongful acts in violation of some recognized legal private right and causing damage.    Each must so exercise and enjoy his legal rights as not to unnecessarily impair or destroy the rights of others; so what is termed a private nuisance may be lawful and permissible as to all the world except the plaintiff whose legal rights are invaded, particularly where the alleged private nuisance consists of the exercise by the defendant of his legal right in an illegal manner.    *Sic utere tuo ut alienum non lædas.*

In the instant case, the requirements of navigation being satisfied by the approval of the secretary of war acting under law conferring that authority upon him, it could not be said that the bridge in question is a nuisance because it impairs and impedes navigation.    That cannot be a nuisance which is authorized by a valid statute.    It would also be an unnecessary and an unconscionable burden on the city to allow this judgment to stand in the form in which it is entered, declaring this bridge a perpetual and continuing nuisance and subjecting the city to many forms of liability arising in favor of persons whose rights are in no wise affected by the manner in which this bridge is constructed.    The statute, ch. 137, Stats., permits a judgment in the form here given by the circuit court, but only in cases to which such form of judg-

ment is applicable. It is not applicable to cases where the wrong is strictly private and can be wholly redressed by a single award of damages, closing up the litigation and dispensing justice to both the parties litigant.

By force of the state constitution, neither the state nor any agency thereof can take the property of any person without compensation, but this does not forbid the infliction of damages when there is no taking. A municipal corporation making an improvement solely for the benefit of the public, under ample authority granted by the legislature and performing the work in a circumspect and careful manner, is not answerable for consequential damages produced thereby to property in the vicinity of such improvement no part of which is taken or used therefor. *Alexander v. Milwaukee,* 16 Wis. 247; *Weeks v. Milwaukee,* 10 Wis. 242. Although *Alexander v. Milwaukee* is questioned in *Arimond v. Green Bay & M. C. Co.* 31 Wis. 316, it is reaffirmed in *Cohn v. Wausau B. Co.* 47 Wis. 314 (note), 2 N. W. 546. *Colclough v. Milwaukee,* 92 Wis. 182, 65 N. W. 1039; *Northern Transp. Co. v. Chicago,* 99 U. S. 635. For illustration: In the absence of statute giving such right the owner of abutting land has no right to recover from the city the damages he has sustained by reason of a change of the grade of the street in front of his premises. But if such work be negligently done (*Smith v. Milwaukee,* 18 Wis. 63), or if some condition upon which the legislature delegated the power to the city be unperformed (*Crossett v. Janesville,* 28 Wis. 420), the municipality will be liable for consequential damages. If the act be wholly *ultra vires,* in the sense that the city could by no compliance with statute do any such act, the city will not be liable for the acts of those pretending to represent it as officers or agents. *Johnson v. Somerville,* 195 Mass. 370, 81 N. E. 268.

It may be that the facts here in evidence would support a verdict finding that the south approach of the bridge in ques-

tion was negligently constructed in that it failed to provide an opening and bascule through which the plaintiff's dock might be reached. That would be a reason for remanding the case for a new trial because the case has not been tried upon that issue. But upon the second ground of liability last mentioned, judgment should be ordered for the plaintiff upon the verdict and undisputed evidence in this case for the sum of $1,000, interest and costs. Similar recoveries have been sustained in that form of action known as trespass on the case in *Maxwell v. Bay City B. Co.* 41 Mich. 453, 2 N. W. 639; *S. C.* 46 Mich. 278, 9 N. W. 410; and *Garitee v. Baltimore,* 53 Md. 422. See, also, *Crossett v. Janesville, supra,* and *Holyoke W. P. Co. v. Connecticut River Co.* 52 Conn. 570. The appellant cites *Jenks v. Miller,* 14 App. Div. 474, 43 N. Y. Supp. 927; *Bond v. Wool,* 107 N. C. 139, 12 S. E. 281; *Clark v. Peckham,* 10 R. I. 35; and Gould, Waters, § 153, to the effect that the right of access means access to the front of the property. This is true when confined to riparian rights, which are in themselves property which cannot be taken without compensation; but it is not true that the owner of property may be damaged by impairing his right of access from the direction from which or to which the river flows, where the builder of the bridge causing the obstruction has not complied with the law authorizing the construction of the bridge. *Maxwell v. Bay City B. Co., supra,* which has the weight of the supreme court of Michigan and the distinguished name of Judge Cooley in its support, is sufficient authority for this proposition unless there is a different rule of liability with reference to cities. I do not think there is in this state, as shown by cases hereinafter referred to. The submission for approval by the common council of the plans for the bridge and improvement in question was intended also for the protection of riparian proprietors and the owners of docks and wharves. Armed with the authority of the state, the city in the exercise of this public

duty could without liability inflict upon such owners all dam-
age to their riparian property or docks not amounting to a
taking of the whole or some part thereof, but, failing to ex-
ercise this great power in the manner provided by law, it lost
the protection of the principle announced in *Alexander v.
Milwaukee,* 16 Wis. 247, and as to the person damaged be-
came a wrongdoer. *Holyoke W. P. Co. v. Connecticut
River Co., supra; Crossett v. Janesville, supra.* As to such
person it proceeded without authority of law but within the
general powers of the city.

No state has gone farther in vindication of this rule than
this state; indeed it has gone farther than I would were the
question a new one, and much farther than is required to sup-
port a judgment for plaintiff in the instant case. *Crossett
v. Janesville, supra,* is unquestionably sound, but when we
come to *Dore v. Milwaukee,* 42 Wis. 108; *Meinzer v. Racine,*
68 Wis. 241, 32 N. W. 139; *S. C.* 70 Wis. 561, 36 N. W.
260; and *Jorgenson v. Superior,* 111 Wis. 561, 87 N. W.
565, the step omitted was not a step preliminary to grading
the streets nor a condition of the exercise of the power to
grade streets, but was a step preliminary to the power to as-
sess the cost of such grading upon the property of the abut-
ting owners. Nevertheless it was held or approved in these
cases and in subsequent cases that the omission of such step
rendered the city liable for damages for change of grade, that
is to say, for damages which were not recoverable at common
law. The grading by the city of a lawfully dedicated and ac-
cepted street, where the public owns the paramount interest,
could in no case be a trespass, and could not be an actionable
wrong unless made so by the omission of the city to observe
the requirements of the statute. There was thought to be in
such cases the combination of unlawful act and resulting or
consequential damage which gave rise to a common-law lia-
bility, although no such liability would have existed had it
not been for the omission by the municipality of the particu-

lar step required by statute. In a case like this, where there is no doubt that the plaintiff is damaged and where there is ample warrant in law for holding the city liable, this court should take no backward steps. I think the judgment as entered should be reversed, but with directions to award judgment in favor of the plaintiff and against the city for the amount of permanent injury found by the jury.

Mr. Justice KERWIN authorizes me to say that he concurs in this dissent.

A motion for a rehearing was denied, with $25 costs, on February 18, 1913.

